FALMOUTH CO-OPERATIVE MARKETING ASS'N v. PENN-SYLVANIA RAILROAD CO.

1. CARRIERS—INTERSTATE COMMERCE TARIFF RULES—ORDERS FOR CARS TO BE IN WRITING.

In an action by a shipper for damages to potatoes stored in its warehouses, caused by failure of defendant to furnish cars for shipment, if the orders for cars were for interstate shipments, then the defense that they were null and void because not in writing as required by the

¹Carriers, 10 C. J. §§ 68 (Anno), 75 (Anno).

interstate commerce tariff rules was available, and would not be cut off by rules of State practice.

2. SAME—WAIVER—WAIVER BY FAILING TO PLEAD RULE.

The provisions of the interstate commerce tariff rule requiring orders for cars for interstate shipments of perishable commodities to be in writing may not be waived by the carrier, nor may it be waived by failure of the carrier to seasonably give notice thereof under State rules of pleading, in an action for damages for failure to furnish the cars ordered.

3. SAME—CARS WANTED FOR INTERSTATE SHIPMENTS.

Evidence *held*, sufficient to establish that the cars ordered were wanted for interstate shipments, and, therefore, came within the law regulating interstate commerce and tariff rules provided under such law.

4. SAME—POTATOES ARE "PERISHABLE."

Potatoes are "perishable" within the meaning of the interstate commerce perishable protective tariffs.

5. SAME—CONFIRMATION OF VERBAL ORDERS FOR CARS.

That the carrier's local agent each day made out a list of verbal orders for cars placed with him by the shipper and forwarded the same to another agent of the carrier in another city, *held*, not to constitute a confirmation in writing of verbal orders, since confirmation, to be such, has to be in writing by the shipper to the carrier's agent.

6. SAME—CHANGE IN OPERATOR OF RAILROAD DOES NOT ABROGATE TARIFF RULES.

A carrier taking over the operation of a railroad is subject to the interstate commerce tariffs and rules in operation at the time; said tariff rules not being abrogated by change of operator.

Error to Wexford; Lamb (Fred S.), J.    Submitted June 11, 1926.    (Docket No. 97.)    Decided February 4, 1927.

Case by the Falmouth Co-operative Marketing Association against the Pennsylvania Railroad Company for failure to furnish cars.    Judgment for plain-

²Carriers, 10 C. J. § 68 (Anno); ³Id., 10 C. J. § 74; ⁴Id., 10 C. J. § 88; ⁵Id., 10 C. J. § 68 (Anno); ⁶Id., 10 C. J. § 625 (Anno).

tiff. Defendant brings error. Reversed, and no new trial ordered.

*Henry Miltner* and *Knappen, Uhl & Bryant,* for appellant.

*Penny & Worcester* and *A. J. Engel,* for appellee.

WIEST, J. This case has been here before and is reported 232 Mich. 538. The facts are there stated, and we restate only sufficient to point the course of decision. Plaintiff brought this suit, claiming that, in reliance upon defendant's performance of its duty as a common carrier under the common law and State statutes declaratory thereof, recognized by its own rules and regulations and supplemented by repeated assurances of its local agent that it was ready and able to perform its duty, plaintiff purchased potatoes and filled its warehouses at Falmouth on defendant's line of railroad in Missaukee county, inclusive of the alleys between bins, and, because of defendant's failure to furnish cars ordered for transportation, the potatoes, to a large extent, rotted. Under plea of the general issue, defendant gave notice traversing plaintiff's allegations, set up want of proper care in storage of the potatoes by plaintiff, and gave excuses for not furnishing cars, and denied liability.

The declaration was filed February 14, 1924. The issue was tried in the circuit and judgment for plaintiff reversed by this court October 27, 1925. The trial now under review commenced November 30, 1925, and resulted in judgment in favor of plaintiff for $16,271.94. Sixteen days before trial defendant moved for leave to amend the plea by a further notice:

"That the orders for cars relied on and set forth in plaintiff's declaration were not given in accordance with provisions of the published tariffs on file with the interstate commerce commission and the Michigan

public utilities commission, and therefore said orders were null and void and no recovery can be had thereon."

This motion was heard and denied ten days before the trial.    At the trial defendant was permitted to make a record on the subject-matter of such notice, but not to employ the same as a defense.    Defendant reviews by writ of error, alleging 85 errors, but presenting them under five heads.

We find one point fatal to plaintiff's right of recovery, and, while other serious questions are presented, we need not discuss them.    If the orders for cars were for interstate shipments, then the defense barred by the court was available and could not be cut off by rules of State practice.    While the duty of the carrier remains as at common law to provide cars to meet normal service needs, the Federal law, in regulation of interstate commerce, requires orders for cars, in which to ship perishable commodities, to be in writing in order to raise the duty to furnish. The carrier cannot waive written orders.    *Davis* v. *Henderson,* 266 U. S. 92 (45 Sup. Ct. 24) ; *Williams* v. *Railroad Co.,* 11 Fed. (2d) 363.    The tariff rule stood at the threshold, had the force of a Federal statute (*Pennsylvania R. Co.* v. *International Coal Co.,* 230 U. S. 184 [33 Sup. Ct. 893]), barred verbal orders, could not be waived by the carrier (*Davis* v. *Henderson, supra*), and the public policy so carried into the law of interstate commerce could not be rendered nugatory by failure of defendant to seasonably give notice thereof under State rules of pleading. If failure to plead the rule permits recovery then waiver is accomplished.    The rule may not be so waived.    The question of the validity of the orders for cars is at the very foundation of plaintiff's case, and, as the subject is covered by the proofs and briefs of counsel for both parties, must be considered.

All orders for cars were verbal. Were the cars wanted for interstate shipments? It is said in behalf of plaintiff that, while all the cars of potatoes shipped during the period in question were interstate, the cars ordered and not furnished might have been used to make shipments intrastate. Clearly the potatoes in the warehouse had not become the subject of interstate commerce, but that is not the question before us, and, therefore, the case of *Arkadelphia Milling Co.* v. *Railway Co.,* 249 U. S. 134, 151 (39 Sup. Ct. 237), has no application.

The question here is whether the cars ordered were for interstate shipments. During the period involved 19 cars were furnished in the month of October, 9 in November, 12 in December, 2 in January, 5 in February, 4 in March, 24 in April, 17 in May and 5 in June, and all were employed in interstate commerce. No shipments were made intrastate; no orders for sales intrastate were shown or even such a market established, and, in proving its damage, plaintiff showed that the market price for potatoes at Cadillac was fixed daily upon sales of Michigan potatoes by members of the Michigan Potato Growers Association in the markets of Indiana, Illinois, New York, New Jersey, Pennsylvania, Louisiana, North Carolina, South Carolina, Virginia, West Virginia, and Tennessee. If orders for cars had been in writing such orders would have disclosed whether the cars were wanted for interstate or intrastate shipments. Cars must have been wanted for specific shipments. Considering the shipments made by plaintiff, the market price fixed by interstate shipments, the absence of proof of any purpose to ship intrastate or of any market within the State, we think plaintiff in no position to urge the cars might have been employed in intrastate commerce if they had been furnished. See *Lempke* v. *Farmers Grain Co.,* 258 U. S. 50 (42 Sup. Ct. 244). If some of

the cars ordered were wanted for intrastate shipments, then how many and which ones? The record gives no answer and leaves what was done by way of shipments to determine what would have been done with all shipments had cars been provided. We must hold that the cars were wanted for interstate shipments, and distribution thereof came within the law regulating interstate commerce and tariff rules provided under such law.

Now, what does the interstate commerce tariff rule require? Interstate perishable protective tariffs Nos. 1 and 2, introduced at the trial, provide:

"Orders for cars desired for loading must be filed, with reasonable advance notice, by shippers with the originating carrier's agent, and must be given in writing (or if given orally or by telephone must be confirmed in writing) and must specify the type of car (refrigerator, ventilator, box, etc.), and character of carrier's service desired."

It is insisted that potatoes do not fall within the term "perishable" and such is manifested by no mention of potatoes in the schedule of perishable commodities.

In *Williams* v. *Cole,* 16 Me. 207, it was held that potatoes, like other vegetables, are in their nature perishable. Potatoes perish through deterioration, accelerated by improper handling or storage or freezing. Carload shipments are usually made in the winter season and require refrigerator cars.

Item No. 1115 of rates, rules and regulations, governing the handling of perishable freight in interstate commerce, provides:

"Perishable commodities are articles which are susceptible to deterioration or decay, and/or, which may be protected by refrigeration, icing, ventilation, or against cold, including:—"

Here follows a long list including "vegetables, fresh

or canned," with the provision that such vegetables "may be protected against heat and/or cold." We must hold that potatoes are perishable within the meaning of the interstate commerce perishable protective tariffs.

In *Williams* v. *Railroad Co.*, *supra*, it was held that orders for cars desired for loading potatoes must be given in writing under the interstate commerce commission tariff.

It appears the local agent, each day, made out a list of verbal orders for cars placed with him, and sent the same to the agent at Cadillac, and we are urged to hold that this writing by the agent constituted a confirmation in writing of all verbal orders for cars. The writing prepared by the agent and sent to his superior was not a confirmation of the verbal orders of the plaintiff. Confirmation, to be such, had to be in writing by the shipper to the carrier's agent. Besides, the list of cars wanted did not name shippers.

The point is made that the tariff rule relied on by defendant was approved while the railroad was under government control and operated by the director general of railroads and the line to Falmouth was owned by the Grand Rapids & Indiana Railway Company, and, therefore, defendant may not invoke the rule. Defendant took over the line of railroad to Falmouth with tariff and rules so established, and the duty to observe the same remains until changed by the sole authority having power in the premises. As successor, defendant is subject to the tariff and rules so placed by authority, and change of operator did not abrogate the tariff rules.

Plaintiff did not comply with the tariffs filed with and approved by the interstate commerce commission, prescribing the manner in which cars for the shipment of perishable commodities in interstate commerce should be ordered, and, therefore, made no case. In

the circuit verdict should have been directed for defendant.

The judgment is reversed without a new trial, with costs to defendant.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, CLARK, and McDONALD, JJ., concurred.