### D. O. McLEMORE v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 20 August, 1930.)

1. **Carriers B a—Agreement to furnish shipping facilities for crop to be planted is too indefinite to be enforceable as contract.**

    An agreement by a transportation company to furnish sufficient shipping facilities at a certain place for the shipment of a crop of watermelons to be raised by the shipper, the agreement being made before the crop was planted and in contemplation of favorable weather conditions, is too indefinite and uncertain to be a valid and enforceable contract, and the alleged contract, tending to create a special advantage to a particular shipper, would also be invalid for that reason.

2. **Same—Failure of shipper to give the written request for service in accordance with the rule constituting part of tariff will bar recovery.**

    Where the shipper of a crop of watermelons in interstate commerce brings action against the carrier for failure to provide sufficient and accessible cars and reasonably adequate loading facilities for transporting part of the crop to the market, resulting in the loss thereof: *Held*, the carrier having filed its tariff on goods to be transported with the Interstate Commerce Commission, the failure of the shipper to give the written request, required by the rule constituting a part of the tariff, as to the type and character of the service desired, will prevent his recovery in the action, and although reasonable accessibility of cars furnished is contemplated in the term "transportation," as defined by the Federal Transportation Act, the machinery of the act is put into operation by the giving of the written request for such service required by the rule.

CIVIL ACTION, before *Sinclair, J.*, at October Term, 1929, of CUM-BERLAND.

The plaintiff alleged and offered evidence tending to show that he was a farmer living near Wade, North Carolina, and during the season of 1928 planted about twenty acres in watermelons; that said watermelons were handled by his agent, David McNeill; that on 19 April, 1928, said

McNeill, acting for and in behalf of plaintiff and as his agent, wrote a letter to G. B. McClellan, division superintendent of the defendant at Rocky Mount, North Carolina. The letter is as follows: "Under favorable weather conditions for growing crops this season, I expect to handle from Wade anywhere from three to four hundred carloads of watermelons. And at present time we have only enough siding to load about twelve cars at a time. In the rush of the season, I cannot see where less than forty to sixty cars will be loaded here daily and ready for movement the second day. Last season I had carload after carload piled upon the ground for the sun to bake, which hurt the sale considerably, and had no room for cars to put them in. This year I am kindly asking you to investigate and make proper arrangements for the handling of these melons. The matter has already been taken up with your agent, Mr. Starling, and he advises that some action will be taken immediately. But the question I want to impress upon your mind is the necessity of plenty room for the placing of cars. Your coöperation in this matter will be highly appreciated, and in return for your kindness I will be glad at any time to send you, or any of your force, at your request or theirs, a nice, sweet, juicy watermelon grown on the rich loamy soil of the Old North State, and agreeable to the most delicate stomach. Thanking you in advance, I am, yours respect."

The superintendent replied on 25 April as follows: "Acknowledging your favor of 20 April having reference to the prospective movement of watermelons from Wade, N. C., this season. I will have this matter looked into and necessary arrangements will be made to take care of your needs." Plaintiff further offered evidence tending to show that he had for shipment to J. Earl Roberts, a wholesale fruit and vegetable merchant doing business in the city of Philadelphia, Pa., eight or nine carloads of watermelons, and of this quantity he was able to ship only five cars, and that he was unable to ship three cars of said melons which resulted in a total loss thereof, amounting to $473.

The original complaint alleged that "not enough space was provided on its sidetrack and pass track on which to place empty cars enough accessible for loading in which to load and ship said melons, nor were the facilities provided such as defendant had expressly promised plaintiff to provide." The plaintiff amended the complaint, alleging "that there were at all times during said shipping season sufficient empty cars on the defendant's pass track at Wade, N. C., in which to load all watermelons raised by the plaintiff and tendered by him to the defendant for transportation at its regular station in Wade, N. C., as aforestated, but said empty cars were placed on defendant's pass track below the point to where the aforementioned borrow pit or ditch had been filled in, making them utterly inaccessible for loading."

Plaintiff's agent testified: "There was at no time any shortage of cars to be loaded. My only claim is that there was no place to put them on. . . . I never at any time requested Mr. Starling, the agent, in writing, to place cars for me at any particular time. I never gave him written orders for any cars at any time."

The three cars of melons for which plaintiff institutes this action were piled in the field and were never transported to the defendant's tracks at Wade, N. C., nor were they otherwise tendered for shipment. The plaintiff testified: "The reason I did not take any over there Wednesday and Thursday is because I wanted to be sure there was something I could put them in. . . . The reason I failed to ship them I could not get cars to ship them in. . . . I did not at any time ask Mr. Starling, the agent at Wade, to place any cars for me, and I made no request of the agent either orally or in writing to place any cars for me."

At the conclusion of the evidence the plaintiff admitted in open court that he "did not tender any loaded cars to defendant which were refused."

The defendant offered evidence tending to show that the facilities at Wade, N. C., which is a small station on defendant's line, were wholly adequate to meet the needs of all shippers, and that at all times a sufficient number of cars were available and accessible to plaintiff and others.

The following issues were submitted to the jury:

1. "Did the defendant, Atlantic Coast Line Railroad Company, contract and agree with the plaintiff, D. O. McLemore, to furnish to him sufficient sidetrack and shipping facilities for loading his watermelons at Wade, N. C., during the shipping season of 1928?"

2. "Did the defendant negligently fail to provide means and facilities at its station in Wade, N. C., reasonably necessary for receiving and transporting all watermelons offered it for shipment by plaintiff and others during the season of 1928, as alleged in the complaint?"

3. "Did the plaintiff, during said season, offer to the defendant for shipment to J. Earle Roberts watermelons sufficient to load three cars, as alleged, and if so, did the defendant negligently fail to provide shipping facilities reasonably necessary for the loading and transportation of said watermelons, as alleged?"

4. "Did the plaintiff, D. O. McLemore, at any time during the watermelon shipping season of 1928, file with the agent of the Atlantic Coast Line Railroad Company at Wade, N. C., written request for the placing of freight cars to be used by him in shipping watermelons?"

5. "What damages, if any, is the plaintiff, D. O. McLemore, entitled to recover of the defendant, Atlantic Coast Line Railroad Company,

proximately resulting from the alleged failure to receive and transport the carload shipments of · watermelons tendered to the defendant for shipment, if any?"

The jury answered the first issue "yes," the second issue "yes," the third issue "yes," the fourth issue "no," and the fifth issue "$300."

From judgment upon the verdict the defendant appealed.

*S. C. McPhail and Nimocks & Nimocks for plaintiff.*
*W. A. Townes and Rose & Lyon for defendant.*

BROGDEN, J. What duty does a common carrier owe under the Federal Transportation Act to a shipper with reference to cars and loading facilities?

The watermelons which the plaintiff shipped were transported from Wade, North Carolina, to Philadelphia, Pa. Such shipment constituted interstate commerce. The melons which plaintiff proposed to ship were also intended to be transported to the same point. The Federal Transportation Act, paragraph 1, subsection 2, U. S. C. A., page 52, imposes upon every common carrier "engaged in the transportation . . . of property to provide and furnish such transportation upon reasonable request therefor." The words "transportation" as used in the act includes not only cars and other vehicles, but "all instrumentalities and facilities of shipment or carriage . . . and all services in connection with the receipt, delivery, elevation, and handling of property transported."

The record discloses that the defendant had filed with the Interstate Commerce Commission certain tariffs applicable to shipments in interstate commerce moving on the lines of defendant in July and August, 1928. Rule No. 35-D was offered in evidence and is as follows: "Orders for cars desired for loading must be filed, with reasonable advance notice, by shippers with the originating carrier's agent and must be given in writing (or if given orally or by telephone must be confirmed in writing) and must specify the type of car (refrigerator, ventilator, box, etc.), and character of carrier's service desired. (See Rules Nos. 80-H and 87-B.)" Rule 27, section 1, was also offered in evidence and provides that "owners are required to load into or on cars freight for forwarding by rail carriers, and to unload from cars freight received by rail carriers, carried at carload ratings."

The rule requiring notice in writing is a part of the tariff and cannot be waived. *James C. Davis v. Geo. D. Henderson,* 266 U. S., 92, 69 L. Ed., 182; *Falmouth Coöp. Marketing Assn. v. Penn R. R. Co.,* 212 N. W., 84.

The plaintiff bases his cause of action upon three theories: First, that the letter of 20 April, 1928, to Superintendent McClellan and the reply

thereto constituted a valid contract for increasing shipping facilities at Wade, N. C. Second, that sufficient cars were not available for moving the property of plaintiff. Third, conceding that a sufficient number of cars were furnished, the cars so furnished were inaccessible by reason of soft, miry and defective approaches thereto.

The first theory is untenable. The letter of 20 April, 1928, contemplated "favorable weather conditions for growing crops this season," and was written before the crop was planted. The experience of mankind through centuries of fair weather and foul has amply demonstrated that the hope of the planting is not always the fact of the harvesting. Hence the letter and reply thereto do not measure up to the dignity of a valid and enforceable contract. Moreover any contract, tending to create a special advantage for a particular shipper, when not within the published tariff, is invalid. *Davis v. Cornwell,* 264 U. S., 563, 68 L. Ed., 848; *Chicago & Alton R. R. Co. v. Kirby,* 225 U. S., 155, 56 L. Ed., 1033.

Neither can the plaintiff recover upon the second theory for the reason that no request in writing was duly filed as required by Rule 35-D. *Davis v. Henderson, supra.*

Nor can the plaintiff recover upon the third theory. Undoubtedly it is the duty of the carrier to furnish reasonable transportation facilities, and this must include reasonable facilities for loading cars for shipment. The furnishing of cars at an inaccessible place or at a place where a shipper could not reasonably have access to them would not comply either with reason or the requirements of the law. Certainly, reasonable accessibility to cars furnished, is contemplated within the term "transportation" as defined by the Federal Transportation Act. However, the machinery of the transportation act is put into operation by the "reasonable requests therefor." Manifestly the carrier is entitled to know the specific demands of the shipper and the time when the need for equipment arises in order that a reasonable opportunity be afforded to promptly supply the need without crippling the service or creating special advantages or discriminations. Beyond the letter of 20 April, 1928, there is no notice whatever to the defendant as to the needs of plaintiff or others, and no indication whatever to defendant as to the type and extent of service required at Wade, North Carolina; nor is there any notice in writing that the cars furnished were inaccessible by reason of defective approaches thereto.

We therefore hold upon the record as presented that the motion for nonsuit should have been allowed.

Reversed.