ROCKWELL *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. CARRIERS—INTERSTATE COMMERCE—CONTRACTS.
   Contract for carriage of interstate carrier must be in accord with rules and regulations governing interstate commerce.

2. SAME—DUTY OF UNLOADING CARLOAD ON SHIPPER OR CONSIGNEE.
   Contract for carriage of interstate shipment of I-beams in carload lots at carload rates placed obligation of unloading them on shipper or consignee.

3. SAME.

Where truck owner contracted to truck interstate shipment of I-beams in carload lots from place of delivery by carrier to bridge site, he stepped into place of consignee, who was charged with duty of unloading, under interstate commerce regulations.

4. MASTER AND SERVANT—LOANING SERVANT.

Where one person puts his servant at disposal and under control of another for performance of particular service for latter, servant in respect of his acts in that service is to be dealt with as servant of latter and not of former.

5. CARRIERS — NEGLIGENCE — INTERSTATE COMMERCE — MASTER AND SERVANT.

Where, under interstate commerce regulations, it was duty of consignee to unload carload of I-beams, and railroad company loaned, without cost, its electric crane and operator thereof to aid in unloading, railroad company is not responsible for operator's negligence, resulting in personal injuries to truck driver employed by consignee to truck said I-beams to bridge site. McDONALD, C. J., dissenting.

Appeal from Genesee; Black (Edward D.), J. Submitted April 5, 1933. (Docket No. 27, Calendar No. 37,062.) Decided October 19, 1933. Rehearing denied December 6, 1933.

Case by George F. Rockwell against Grand Trunk Western Railway Company for personal injuries alleged to have been caused by defendant's negligence. Verdict and judgment for plaintiff. Defendant appeals. Reversed, without a new trial.

*C. A. Withey* and *C. A. Bishop,* for plaintiff.

*H. V. Spike* (*Brownell & Gault,* of counsel), for defendant.

McDONALD, C. J. (*dissenting in part*). This is an appeal from a judgment obtained by the plaintiff in an action to recover damages for personal injuries

alleged to have been caused by the negligent operation of a crane while unloading heavy steel I-beams from one of defendant's cars in its yard at Flint, Michigan.

The case has been tried three times. The judgment entered in the first trial was reversed by this court in 253 Mich. 144. The second was a mistrial. The third from which the present appeal was taken resulted in a verdict and judgment in favor of the plaintiff for $20,000. As the case presents some questions not in the former record it will be necessary to briefly restate the facts in their connection with the new matters now involved.

The beams were bought by Mr. Rogers, State highway commissioner, for use in the construction of a bridge. They were consigned to him at Flint and were delivered in defendant's yard. It was an interstate shipment. The plaintiff was in the trucking business, and on the day he was injured was employed by the bridge contractor to unload the beams and haul them to the site of the bridge. For the purpose of unloading heavy materials, the defendant maintains without cost to the shippers or their consignees a crane which is always operated and controlled by one of its employees. At the time of the accident the plaintiff and Mr. Rockefeller, his employee, were on the car assisting in the unloading. The crane was operated by Tom Lewis, an employee of the defendant. In the use of the crane to lift an object straight up, it is necessary that the fulcrum or lifting power be directly over the object to be lifted. If the fulcrum is to one side when the beam is lifted, it swings in that direction. These beams were to be lifted straight up, and, when raised to a sufficiently safe height, swung over the side of the car and deposited on timbers on the

ground. At the end of the cable on the crane are huge clamps which are attached to the object to be lifted. The man on the load who attaches them is called the hooker-on. At the time of the accident, one of the beams had been hooked on and a signal given to lift it straight up. As the fulcrum was not directly over the beam it did not lift straight up, but swung in the direction of the plaintiff, struck him, and inflicted the injuries for which he brought this suit.

It is the plaintiff's claim that, when the signal was given to lift the beam straight up, it was the duty of the operator to place the fulcrum in position to accomplish that result, and that his neglect of duty in that respect constituted actionable negligence for which the defendant, whose servant he was, is liable. The plaintiff says that on his part he was free from negligence, but if he were not, that fact would not bar his recovery because the defendant was guilty of subsequent negligence, a claim that we will state in greater detail when we reach a discussion of that question.

The defendant denies any negligence on its part, but says if it were negligent such negligence cannot be made the basis of recovery because the plaintiff was also negligent, and his negligence continued up to the very instant of the accident concurring with the defendant's negligence, if any existed, in causing the injury. The defendant also claims that as this shipment was interstate, subject to the rules and regulations of the official classification by the interstate commerce commission, which have the force and effect of Federal statutes, and which require the owner to unload, a judgment against the defendant is inconsistent with such rules and regulations, and imposes an undue burden upon interstate

commerce in violation of the commerce clause of the Constitution of the United' States (article 1, § 8, subd. 3), and denies to defendant equal protection of the laws (14th Amendment); that the requirement imposing the duty of unloading on the plaintiff could not be assumed by the carrier, whose responsibility ceased when the shipment was delivered in its yard at the usual place for unloading, and that thereafter any assistance rendered the plaintiff by its employee was as a mere volunteer, as the agent and servant of the owner for whose negligence the defendant cannot be held liable.

These defenses were urged by the defendant in a request for a directed verdict and again on a motion for a new trial. The errors relied on for reversal relate to the refusal of the court to grant the motion for a directed verdict, to the refusal of requests to charge, and to certain statements in the charge as given.

1. Did the court err in refusing to direct a verdict in favor of the defendant?

It is not necessary to discuss the claims in regard to the negligence of the defendant and the contributory negligence of the plaintiff. In the former appeal, on substantially the same evidence, we held that they were questions for the jury. In this case the trial court was right in refusing to treat them as questions of law.

It was also decided on the former appeal that the operator of the crane in assisting to unload the beams was the servant of the defendant, for whose negligence, if any, defendant would be liable. In the present record there appears for the first time the fact that the shipment was interstate and the plaintiff was required by interstate commerce rules which have the effect of Federal statutes to unload,

from which the defendant argues that the operator of the crane at the time of the accident was not doing anything required of the railroad company but was doing the plaintiff's work and was the plaintiff's agent and servant.

We agree with the defendant that, in furnishing the crane and operator, the railroad company was not discharging any duty or contract as carrier. It did not and could not lawfully contract to unload the shipment. The rules and regulations of the interstate commerce commission prohibit it. They have the force and effect of Federal statutes and cannot be waived by the carrier. *Falmouth Cooperative Marketing Ass'n* v. *Railroad Co.,* 237 Mich. 406.

But there is nothing in the rules prohibiting the carrier from loaning a crane for that purpose. In doing so it stood in the same relation to the plaintiff as any third party in no way connected with the shipment.

In the instant case there was no waiver of the rule. Both parties recognized it. The defendant did not assume the duty to unload. It merely loaned an appliance and an operator to assist in unloading heavy materials. In view of these facts, notwithstanding the shipment was interstate commerce, the doctrine of loaned servant applies and should rule our decision.

Whose work the operator was doing is an important test in determining whose servant he was, but it is not the only test, for though he was doing work for the plaintiff he was not the plaintiff's servant unless plaintiff had the exclusive right to direct and control him in doing the work. A person may loan a servant to another to do a particular work, but unless he puts the servant under the direction

and control of the other in the performance of that work, he remains liable for his negligent acts. The question, then, is With whom was the power of control? It is clear that the plaintiff had no control over the servant as to his method of operating the crane, and it was the manner of operating it that caused the injury. The only control the plaintiff had was to tell the operator in which direction the beams were to be lifted and where they were to be placed. He could not tell him how to operate the crane. The operator did that according to the directions he had received from the defendant, his general master. Over the act which caused the injury the plaintiff had no control. The work of operating the crane was the defendant's. work.

On this question counsel for the respective parties cite cases sustaining their several contentions. All of the cases are in harmony as to the law on the doctrine of loaned servants. They differ only in its application to the different facts in particular cases. The defendant cites and relies on *Rau* v. *Railroad Co.*, 311 Pa. 510 (167 Atl. 230). In that case the plaintiff's husband was employed by Mr. Sordoni, a contractor, and at the time of the injury was assisting in the unloading of limestone from defendant's cars. His injury which resulted in death was caused by the negligent operation of a crane furnished by the carrier. The court held that the operator of the crane was the servant of the decedent's employer, but based decision on these facts, which we quote from the opinion:

"The car unloading on the day of the accident was the seventh or eighth car that had been so unloaded. To facilitate their work, and entirely for their own convenience, Sordoni's men had removed the bucket or clamshell, normally a part of the hoisting appa-

ratus; it was therefore necessary for them to re-attach it before the crane could be returned to the appellant; while making this adjustment, the fatal accident occurred. The boom had been swung over the point where the clamshell lay and, before the attachment could be made, the boom fell on Rau.''

In view of these facts it is surprising that anyone should claim that the carrier was responsible for the negligent act of the operator of the crane. The accident happened after the work of unloading was completed and while Sordoni's men were working on the crane to restore it to the same condition it was in when the carrier loaned it to them. If they had not assumed control of the crane by altering it for their own convenience the accident would not have occurred. These facts very clearly distinguish the case from the one we are considering.

The defendant also cites *Denton* v. *Railroad Co.*, 284 U. S. 305 (52 Sup. Ct. 141). In that case a United States railway postal clerk was injured by the negligence of one Hunter, a porter in the service of the defendant railway company, but who, at the time of the accident, was assisting in loading mail into one of the defendant's mail cars. The question was whether in loading the mail Hunter was the servant of the railroad company or of the Federal government.

The Federal statute requires railroad companies to carry mail in the manner prescribed by regulations of the postmaster general. One of these regulations requires the carriers to furnish men to assist in loading mail under the direction of a postal clerk, and further provides that no mail shall be loaded in a car unless there is a postal clerk on duty to receive and care for it. It is very plain that the clerk in charge of the car was intended to have absolute

control of the loading. He was charged with the responsibility of seeing that all of the mail was received and cared for, a duty which he could not delegate to another and which he could not discharge without having supervision and control of the men who were doing the loading. In these circumstances the court held that, in doing the work from which the accident resulted, Hunter was the servant of the government and not of the carriers. No other conclusion was intelligently possible.

In the present case we think the trial court did not err in refusing to hold as a matter of law that the operator of the crane was the agent and servant of the plaintiff in doing the work which resulted in his injury. And that is the decisive question on plaintiff's right to recover. The shipment was interstate commerce, but that is not controlling, because the judgment is not based on an agreement to unload and the carrier did not assume that burden in violation of the rules of the interstate commerce commission.

2. Was there evidence to warrant the court in submitting the question of subsequent negligence to the jury?

The evidence was ample. Mr. Lewis, operator of the crane, testified that he was the only man who could move the fulcrum, that when he applied the power to lift the beam he knew where the plaintiff was standing. "I could see him; I was looking at him, watching him. * * * I could have seen the fulcrum if I had looked. * * * I don't think this accident would have happened if I had retarded the fulcrum until it was directly over the beam to be lifted."

Subsequent negligence follows contributory negligence. Assuming that the plaintiff negligently

placed himself in a position of peril on the car as defendant claims, if the operator of the crane saw him and knew he was in a dangerous position and could have stopped the movement of the crane instantly, as he said he could have, and thus have avoided the injury, he was guilty of subsequent negligence in failing to do so. It was a question for the jury. But the defendant says that the plaintiff's contributory negligence continued up to the instant of the accident, that the operator of the crane realized the plaintiff's danger and warned him, and that plaintiff's failure thereafter to get into a safe place and watch the movement of the beam was negligence which concurred with defendant's negligence in causing the accident. If there was proximate concurrent negligence there could be no subsequent negligence. Defendant was entitled to have its theory of concurrent negligence submitted to the jury. A proper request for that purpose was offered but the court refused to submit it. This was error for which the judgment must be reversed and a new trial granted.

On a new trial, testimony as to the accident that happened while Mr. Lewis was operating the crane a week before the occasion in question should be excluded. It has no bearing on this issue.

The failure of the court to instruct the jury on the present worth of the plaintiff's future damages will probably not arise on a new trial, and needs no further comment in this opinion.

No other questions require discussion.

The judgment should be reversed and a new trial granted, with costs to the defendant.

North, J. More than a year after our former decision in this case (253 Mich. 144) plaintiff filed an amended declaration. Subsequently defendant's an-

swer to the amended declaration was filed including notice of special defenses. Under such notice defendant brought into the case for the first time the defense that it was a carrier engaged in interstate commerce and subject to the interstate commerce act. Notwithstanding this change in the pleadings, the trial judge held as a matter of law, as in the earlier trial, that Lewis, the operator of the crane, was the employee of the defendant railway company, and that it was therefore chargeable with Lewis' negligence, if any. While it was a perplexingly close question, in our former opinion we approved the holding of the trial judge. On this appeal the question is presented whether such holding is affected by the change in the record disclosing that the defendant was engaged in interstate commerce and subject to the regulations imposed thereon.

The shipment of the I-beams involved in this law suit was in carload lots and at carload rates. Such shipment is subject to the following interstate commerce regulation:

"Owners are required to load into or on cars freight for forwarding by rail carriers and to unload from cars freight received by rail carriers carried at carload ratings." Interstate Commerce Regulations & Tariffs, Rule No. 27, § A.

The contract for carriage of an interstate carrier must be in accord with the rules and regulations governing interstate commerce. *Pennsylvania R. Co.* v. *Marcelletti,* 256 Mich. 411 (78 A. L. R. 923).

"The tariffs and schedules filed with the interstate commerce commission become a part of the contract and as such binding on the parties. To hold otherwise would open wide the door for unjust discrimination. * * * The relations of the shipper and carrier are contractual. * * * In

order to prevent discrimination the law has provided that certain things shall be done in all shipments. Neither the shipper nor the carrier can deviate from them without discrimination which is the important thing inhibited." *Thomas Canning Co.* v. *Southern Pacific Co.,* 219 Mich. 388, 396; 223 Mich. 154.

"In an action for damages to horses shipped by express from one State to another, the contract under which they were shipped is to be construed in harmony with the Federal transportation act, under the regulations, rates, and rules promulgated pursuant thereto by the interstate commerce commission, which, so far as applicable, became part of the contract." *Shier* v. *American Railway Express Co.* (syllabus), 234 Mich. 505.

Thus, in the instant case, the contract between the shipper and carrier places the obligation of unloading the carload lot upon the shipper or consignee. Had the parties contracted that the carrier without additional charge should unload the shipment, it would have been a violation of interstate commerce regulations and subjected them to the penalty provided. Thus, as a matter of law, as well as a matter of contract, in this interstate shipment the duty of unloading devolved solely upon the consignee. When plaintiff contracted to truck these I-beams from the place of delivery by the carrier to the bridge site, he stepped into the place of the consignee, who was charged with the duty of unloading. At his option he might or might not take advantage of the conveniences afforded by the carrier in unloading the shipment. While in no way obligated to do so, in the instant case the defendant had provided at Flint a Gantric crane, the use of which, together with an operator, was tendered to shippers to aid them in unloading heavy articles.

To hold that the defendant railroad company in so doing was discharging a part of its duty or its contract as a carrier would be to hold that it was acting in violation of interstate commerce regulations. The record in this case will not sustain a conclusion that the carrier contracted to unload this shipment. Instead, in the face of the interstate regulation, the only justifiable conclusion is that the defendant carrier loaned this unloading device and its employee in operating the same to the consignee, in whose place plaintiff was acting in receiving the shipment.

Since our former decision, the Supreme Court of the United States decided the similar case of *Denton v. Railroad Co.,* 284 U. S. 305 (52 Sup. Ct. 141). In that case the contract with the railroad company for carrying mails provided that the railroad company should furnish men necessary to handle the mails, "to load them into and receive them from the doors of railway post office cars," etc. A porter employed by the railroad company carrying mails assisted in the discharge of that portion of the railroad company's contract. Through his negligence Denton was injured. The porter was held to have been acting as the agent of the United States government and not in the discharge of his duties as an employee of the railroad company, and hence such company was not responsible for his negligence. It was there said:

"When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter and not of the former. This rule is elementary and finds support in a large number of decisions, a few only of which need be cited."

Numerous cases are cited, including *Standard Oil Co.* v. *Anderson,* 212 U. S. 215 (29 Sup. Ct. 252), which latter case is extensively quoted, and, together with *Driscoll* v. *Towle,* 181 Mass. 416 (63 N. E. 922), is distinguished from the case before the court in the following language:

"In each of these cases the facts plainly demonstrated that the work was that of the general master, and that in doing it, the servant had not passed under the direction and control of the person for whom the immediate work was being done, the latter being looked to not for commands, but for information."

The following is approvingly quoted from the *Standard Oil Case:*

"To determine whether a given case falls within one class or the other, we must inquire whose is the work being performed."

Applying this test to the instant case, there is no dispute that under the contract for interstate carriage the duty of unloading the I-beams was that of the consignee and not of the carrier.

In another decision involving an interstate carload shipment it was recently held:

"Upon delivery of the cars at the usual place of delivery of carload shipments of livestock, it was the duty of the plaintiff to take charge of them, unload and look after them; and such assistance in unloading and looking after them as may have been rendered by the employees of the delivering carrier was purely voluntary, and such employee while so engaged was the agent of the owner, and not of the railroad." *Columbus & G. R. Co.* v. *Owens,* 153 Miss. 628, 631 (121 South. 265, 62 A. L. R. 521).

Under the record now before the court it must be held, in view of the interstate commerce regula-

tion, that the railroad company was not responsible for damages resulting from the negligence of its employee, who was loaned to the consignee to aid in unloading this shipment of I-beams.

Judgment is reversed, without a new trial. The case is remanded to the circuit court for entry of the judgment in accordance herewith.

Potter, Sharpe, Fead, Wiest, and Butzel, JJ., concurred with North, J. Clark, J., took no part in this decision.