## BOSARGE v. GAINES.

### No. 8558.

Circuit Court of Appeals, Fifth Circuit.

Jan. 11, 1938.

William Estopinal, of Gulfport, Miss., for appellant.

R. A. Wallace, of Gulfport, Miss., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

On general demurrer the petition of Joe Bosarge against his employer, Frank Gaines, was dismissed. The facts alleged are simple. Gaines was a contractor building a warehouse and wharves at Gulfport, Miss., in which cement was used. A carload of cement shipped on interstate tariffs was placed by the railroad company

for unloading on a side track along which ran the wooden depot platform. Gaines sent Bosarge to remove the cement from the car and place it on the edge of the platform to be hauled away, directing him to make haste. Bosarge borrowed a hand truck from the railroad and was trucking cement across the platform when a plank broke under the truck wheel, throwing the truck handle against his side and injuring him. It is alleged that the work of unloading the cement was wholly that of the consignee Gaines, and that Gaines was negligent in not furnishing Bosarge a safe place to work and in not warning him of the rotten plank which "was not visibly rotten on top and could not be observed by plaintiff in connection with the discharge of his duties."

The appellant's argument is that under the railroad tariffs the duty of unloading a carload shipment is on the consignee, and that the railroad carrier has no responsibility in the work, and, if it furnishes appliances, they are adopted and used by the consignee who becomes solely responsible for their condition to his servants. Rockwell v. Grand Trunk Western Ry. Co., 264 Mich. 626, 250 N.W. 515, and Columbus Ry. Co. v. Owens, 153 Miss. 628, 121 So. 265, 62 A.L.R. 521, and Robirtson v. Gulf & S. I. R. R. Co., 171 Miss. 628, 158 So. 350, are specially relied on.

It is true that under the interstate tariffs the consignee must unload carload shipments, and that the instrumentalities he uses, even when they belong to the carrier, are adopted by him, and he and not the carrier becomes responsible for their safety to his servants. Rockwell v. Grand Trunk Ry. Co., supra. But a depot platform is not an instrumentality, but a part of the carrier's immovable premises. When the carrier places a carload shipment for unloading and notifies the consignee that it is ready, he invites the consignee and his servants to enter the premises where the car is placed for a business purpose, and has the usual responsibility of an owner of premises to business invitees. The carrier's duties of transportation and delivery are at an end when the car is placed and the consignee notified, but not his responsibility for the safety of the premises which the consignee must enter upon to get the shipment. We are not impressed by the argument that Bosarge has no remedy against the railroad and must therefore have one against his master. He has the same remedy against the railroad which Gaines would have if he himself had come for the cement.

But in truth Bosarge's right against his master is independent of any right he may have against the railroad, and depends upon the duty of a master to a servant. The general duty to exercise care to furnish a reasonably safe place to work is undeniable. Baltimore & Ohio R. R. Co. v. Carroll, 280 U.S. 491, 50 S.Ct. 182, 74 L.Ed. 566; Aqua System v. Kodakoski, 5 Cir., 88 F.2d 395. And also to give warning of dangers known to the master but not to the servant. Aqua System v. Kodakoski, supra; Labatt, Master & Servant, §§ 1016, 1509. Touching warning, no case is made, for it is not alleged that the master knew of any unsafety in the platform, and is alleged that it was not observable from above. There were allegations that the master often received freight there and had storage rights in the depot building adjacent to the platform, but there is no contention that he had any charge of the platform or knew it was in bad condition.

The question left is whether he so adopted it as a place of work as to put a duty of inspection on him to see that it was safe. We do not think the circumstances justify such a legal conclusion. Nothing was to be done on the platform save to get the cement from the car to carry it away. There was no exclusive occupancy of it by Gaines for his work, but only a temporary use necessitated by the platform's being there. He could not get the cement otherwise. The railroad maintained it for just that use by its patrons. There cannot be inferred a duty to inspect depot platforms as resting on all persons who send their servants thither to get freight. As well might it be contended that all the streets and bridges which the servant must cross on the way must be inspected and made safe by the master. We are pointed to no case holding that a master is responsible for the safety for ordinary uses of such public places as streets, bridges, wharves, and depot platforms when sending his servants over them. We believe no such responsibility exists. Such risks as attend them are, as respects the master, assumed in undertaking an employment involving their use. If the master knows of an unusual danger, or an existing defect, he should give warning to a

servant likely not to know it; but he owes ordinarily no duty of inspection and has no power to make repairs on such places.

Judgment affirmed.