HECKER PRODUCTS CORP. *v.* TRANSAMERICAN FREIGHT
LINES, INC.

1. JUDGMENT—SUMMARY JUDGMENT—UNLIQUIDATED DAMAGES.
Until damages are ascertained in a legal manner, there can be
no final judgment; hence, where supporting affidavits for
plaintiff's motion for summary judgment disclose the claim
was for unliquidated damages, the motion was properly denied.

2. SAME—SUMMARY JUDGMENT—OBJECTIONS—AFFIDAVITS OF MERITS.
It is the better practice to include in defendant's affidavits of
merits in opposition to summary judgment all objections to
plaintiff's affidavits supporting his motion for summary judg-
ment.

3. CARRIERS—LIMITATION OF LIABILITY—ARTICLES OF EXTRAORDINARY
VALUE—PUBLISHED TARIFFS—SPECIAL AGREEMENTS.
Provision in uniform order bill of lading that carrier would not
carry nor be liable for documents, specie or for articles of
extraordinary value not specifically rated in the published
classifications or tariffs unless a special agreement to do so
were entered into and a stipulated value of the articles were
indorsed thereon did not constitute a limitation upon the
carrier's agreement invalid under Federal statutes regulating
interstate commerce (49 USCA 1940 Cum. Supp. § 20[11]).

4. SAME—CLASSIFICATION OF COMMODITIES FOR TARIFFS.
The exclusion of a commodity from all classes for which tariffs
for common carriers are published is classification of it in as
real a sense and with as definite effect as to include it in any
one of the usual classes.

5. SAME—CONTRACT—BILL OF LADING—CLASSIFICATION OF TARIFFS.
The classification of tariffs on file with the interstate commerce
commission as well as the bill of lading becomes a part of the
contract of carriage.

6. SAME—REPORTS—ARTICLES OF EXTRAORDINARY VALUE—SPECIAL
AGREEMENT.
Shipper could not recover from motor carrier for loss of reports
valued at $5,000 as they were articles of extraordinary value
where bill of lading provided that such articles would not be
accepted for carriage nor carrier be liable for their loss

without a special agreement on which their value was indorsed, no special agreement was made, and bill of lading stated contents and condition of contents of packages received were unknown.

7. SAME—DAMAGES—FINDING OF COURT—ADMISSIONS.

In shipper's action against motor carrier, finding of court was correct which fixed damages sustained by shipper incident to loss of desks and filing cabinets in amount admitted in defendant's letter wherein it stated it would be glad to pay amount claimed therefor by plaintiff.

8. SAME—DAMAGES—EVIDENCE—FILE HOLDERS.

In shipper's action against motor carrier for loss of file holders lost in transit, no recovery is allowed where there is no testimony to show their value, as they might have been old or worn or might have referred to customers of plaintiff who were no longer in business.

9. APPEAL AND ERROR—MODIFICATION OF JUDGMENT—INTEREST—COSTS.

In shipper's action against motor carrier for loss of, and damage to, goods in transit where judgment for plaintiff is substantially modified, interest is allowed on balance for which recovery is permitted from date of judgment in trial court and defendant is awarded costs.

Appeal from Wayne; Callender (Sherman D.), J. Submitted October 22, 1940. (Docket No. 69, Calendar No. 41,307.) Decided February 7, 1941.

Assumpsit by Hecker Products Corporation, a New Jersey corporation, against Transamerican Freight Lines, Inc., a Michigan corporation, for loss of freight. From judgment for plaintiff, both parties appeal. Modified.

*Oxtoby, Robison & Hull* (*Harvey A. Fischer* and *John J. Mooney, Jr.,* of counsel), for plaintiff.

*Hill, Hamblen, Essery & Lewis* (*Thomas H. Adams* and *Austin Fleming,* of counsel), for defendant.

BUTZEL, J.   In 1936, the plaintiff, then known as the Gold Dust Corporation, delivered certain personal property to defendant motor carrier for transportation from New York City to Indianapolis, Indiana.   Defendant is a common carrier, operating under and subject to the provisions of the act of Congress* relating to motor carriers operating between States.   A uniform domestic bill of lading was issued by defendant which stated that the shipment consisted of:

"Boxes common soap
  Boxes washing powder (dry)
  Boxes soap powder (dry)
  Barrels washing powder (dry)
  Boxes scouring powder (dry) (fibre cans)
  Boxes soap chips (dry) (fibre cans)
  Barrels soap chips (dry)
  Boxes shoe dressing, liquid in glass
  Boxes shoe dressing, solid in tins
  2 (two) secondhand wood desks (crated)
  3 (three) wooden cases records
  3 (three) fibre cases records
  3 (three) metal cabinets
     Total - 11 pieces (eleven pieces)."

Section 5 of the terms and conditions under which the shipment was made, and as printed on the back of the bill of lading, provides:

"No carrier hereunder will carry or be liable in any way for any documents, specie, or for any articles of extraordinary value not specifically rated in the published classifications or tariffs unless a special agreement to do so and a stipulated value of the articles are indorsed hereon."

---

* Motor Carrier Act, 1935; 49 USCA 1940 Cum. Supp. § 301 *et seq.* (chap. 104, part 2, § 201, as added August 9, 1935, chap. 498, 49 Stat. at L. 543 *et seq.*).   Later amended, chap. 722, title 1, § 15, 54 Stat. at L. 919 *et seq.*—REPORTER.

While the shipment was en route, the motor vehicle of defendant collided with a train and it is the claim of plaintiffs that its loss through defendant's subsequent failure to deliver consisted of:

"Two (2) secondhand wooden desks at
   $15.00 each .......................$30.00
Two (2) metal 4-drawer file cabinets at
   $42.00 each ....................... 84.00
Seven hundred and fifty (750) Dun &
   Bradstreet reports at 87½¢ each.......656.25
Seven hundred and fifty (750) Interchange reports at 50¢ each............375.00
Seven hundred and fifty (750) file holders
   at $14.09 per M..................... 10.57
                        $1,155.82"

Plaintiff also expended the sum of $127.43, liability for which is admitted, for reconditioning and labor on account of damage to a large number of other Dun & Bradstreet and Credit Interchange commercial reports.

Plaintiff made demand for the entire amount of its alleged loss and subsequently defendant wrote plaintiff that defendant "would be glad to honor" the claim for two secondhand wooden desks at $15 each and two metal four-drawer filing cabinets at $42 each, but that it would not pay for the commercial credit reports upon which no value was placed at the time shipment was made. It further stated that "this merchandise" was specifically excluded in the bill of lading, and also in defendant's tariff rates, which were on file with the interstate commerce commission, and that it would be a violation of the act to honor a claim on any commodities or merchandise which defendant had specifically excluded in

its bill of lading and its tariffs; that had it known the contents of the boxes at the time of shipment it would have declined to handle them; that the violation of the tariff and the rules and regulations of the commission would make both plaintiff and defendant subject to a fine.

Plaintiff thereupon brought suit for the full amount it claimed. A motion for summary judgment by plaintiff supported by affidavits was met by an affidavit of merits by defendant and denied on the hearing of the motion. After a hearing on the merits by a judge without a jury, the trial judge awarded plaintiff a judgment for $500. Plaintiff, claiming that it was entitled to the full amount of its claim, appealed. Defendant, contending that plaintiff was only entitled to $127.43 for reconditioning and labor, filed a cross appeal. Defendant asserts that in no event is it liable for the loss of the financial reports; that there has not been proper proof in regard to any of the other items claimed with the exception of the $127.43 for reconditioning and labor.

It is claimed that the court erred in refusing to enter a summary judgment. Mandamus, at the time, was applied for in this court and refused. In the affidavit of merits, defendant sets forth the fact that:

"Under Rule 4 of defendant's Tariff MF–1.CC No. 10, in effect at the time of said shipment and on file with the Interstate Commerce Commission, it was provided as follows:

" 'Rule 4.–Articles not accepted. Unless otherwise provided, carrier will not accept the following articles for forwarding: * * * Articles of extraordinary value, bank bills, * * * deeds, drafts, * * * legal papers, valuable papers,' * * *

and that under the official classification in effect at the time of said shipment and on file with the inter-

state commerce commission it was provided by Rule 3 as follows:

" 'Unless otherwise provided, the following property will not be accepted for shipment nor as premiums accompanying other articles: bank bills, coin or currency; deeds, drafts, notes or valuable papers of any kind; * * * or other articles of extraordinary value.'

and that under section 5 of the uniform order bill of lading, above referred to, it was provided as follows:

" 'Sec. 5. No carrier hereunder will carry or be liable in any way for any documents, specie, or for any articles of extraordinary value not specifically rated in the published classifications or tariffs unless a special agreement to do so and a stipulated value of the articles are indorsed hereon.' "

It is further stated that no value was placed upon the financial and Interchange reports at the time the property was tendered to defendant for shipment, nor was defendant in any way advised as to the valuation placed upon such reports by plaintiff, nor was there any special agreement between the parties pertaining to the value of the reports or to their shipment.

An examination of the supporting affidavits included in plaintiff's motion for summary judgment discloses that the claim was for unliquidated damages. Until they were ascertained in a legal manner, there could be no final judgment. *Cohen* v. *Peerless Soda Fountain Service Co.*, 257 Mich. 679.

Defendant also claims that the affidavit in support of motion for summary judgment was not in proper form as it did not state affirmatively that the affiant, if sworn as a witness, could testify as to the facts stated in the affidavit supporting the motion. Plaintiff asserts, however, that defendant should have objected in the affidavit of merits to any defects in

plaintiff's affidavits supporting the motion. Defendant avers that this was not necessary. While it would have been better practice to include all objections in the affidavit of merits, nevertheless, the trial judge correctly denied the motion for summary judgment. We will not disturb the ruling. No claim is made in the appeal that plaintiff was entitled to a summary judgment for part of its claim.

The serious question in the case is whether plaintiff can recover the amount it is claiming for the loss of commercial credit reports. The evidence indicates that these reports are of very uncertain value and that some of them may have no value at all because of age. While plaintiff attempted to show the original cost of the reports, it did not prove their value, if any, at the time of the loss. The testimony indicated that after three months the reports begin to lose their value on account of changes which may occur in the financial conditions of the customers, and that after a year a new report is desirable, if not necessary; that Dun & Bradstreet usually make a number of copies of the reports when issued, and that duplicates are furnished to patrons at a very nominal cost. It is questionable whether plaintiff is entitled to any amount whatsoever for the loss of the reports, but we base our decision on another ground.

Section 217 of the motor carrier act, 1935 (49 USCA, § 317 [chap. 104, part 2, § 217, as added August 9, 1935, chap. 498, 49 Stat. at L. 560]), provides for the filing, posting and publication of rates by the carrier. It forbids deviation from such rates, which may not be changed until after a 30-day notice, or the extension of any privileges or facilities for transportation except such as are specified on its tariff file. It further forbids transportation of

persons or property by motor carrier without filing a tariff of rates and charges in the prescribed manner.

It appears from the record that in the shipment there were 3,600 of the Dun & Bradstreet reports and a like number of the Credit Interchange reports. According to plaintiff's figures, these reports would have had a value of $4,950, which, added to the alleged value of the other property shipped, would make the shipment worth in excess of $5,000. The reason for the limitation on the bill of lading as well as in the published tariffs, which provided for the exclusion of valuable papers or articles of extraordinary value, is obvious. The provision that the carrier will not accept articles of extraordinary value or valuable papers is plain. It is stipulated in the tariff that the carrier will not accept "articles of extraordinary value * * * or valuable papers." In Rule 3 of the official classification in force at the date of the loss, it is stated that, unless otherwise provided, "valuable papers of any kind * * * or other articles of extraordinary value" will not be carried.

The bill of lading stated that the "contents and condition of contents of packages [were] unknown," and plaintiff makes no contention that defendant had actual knowledge of the contents of the boxes.

The entire shipment was to be conveyed for a freight charge of approximately $30. While we are not concerned with the harshness of a legal contract, the reason for the refusal of the motor truck carrier to accept almost $5,000 of valuable papers at this low rate is plain. Papers of that value are not usually transported in a motor carrier without extra protection. As a rule a motor truck between cities does not afford such precautionary safeguards.

Plaintiff, however, claims that section 5 of the bill of lading is void because in contravention of title 49, § 20, subd. 11, USCA 1940 Cum. Supp.*, being part of the Cummins amendment to the Carmack amendment to the interstate commerce act; and that section 20, *supra,* holds that the carrier shall be liable ''for any loss   *   *   * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the interstate commerce commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void.''

There is no limitation of liability on the part of defendant. Its agreement was that it would not be liable in any way for articles of extraordinary value not specifically rated unless a special agreement was entered into and stipulated articles were indorsed thereon. No value whatsoever was placed on the shipment nor was any special agreement entered into by the parties.

The exclusion of a commodity from all classes is classification of it in as real a sense and with as definite effect as to include it in any one of the usual classes. *Director General* v. *Viscose Co.,* 254 U. S. 498 (41 Sup. Ct. 151, 65 L. Ed. 372).

We have repeatedly held that the classification of tariffs of a carrier on file with the interstate commerce commission becomes part and parcel along

---

* Chap. 104, § 20, 24 Stat. at L. 386; chap. 3591, § 7, 34 Stat. at L. 593; chap. 309, § 14, 36 Stat. at L. 555; chap. 176, § 1, 38 Stat. at L. 1196; chap. 301, 39 Stat. at L. 441; chap. 91, §§ 434–438, 41 Stat. at L. 493, 494; chap. 761, 44 Stat. at L. 835; chap. 510, § 3, 44 Stat. at L. 1448; chap. 208, 46 Stat. at L. 251. Later amended, chap. 722, title 1, § 13, 54 Stat. at L. 916.—REPORTER.

with the bill of lading in making up the contract of carriage. *Thomas Canning Co.* v. *Southern Pacific Co.*, 219 Mich. 388; *Shier* v. *American Railway Express Co.*, 234 Mich. 505; *Rockwell* v. *Railway Co.*, 264 Mich. 626.

We hold that reports valued at $5,000 were articles of extraordinary value. Valuable papers and articles of extraordinary value were not rated in the tariff on file with the interstate commerce commission. The provisions in regard to nonliability for documents and articles of extraordinary value were not of limitation but exclusion. Under the circumstances, plaintiff can not recover. See *Herring* v. *Railroad Co.*, 236 Ala. 618 (184 South. 180), certiorari denied 1939, 306 U. S. 644 (59 Sup. Ct. 583, 83 L. Ed. 1044); *Kirwan* v. *Railway Express Agency*, 118 Pa. Super. 431 (179 Atl. 924); *Yaeck* v. *Adams Express Co.*, 69 Pa. Super. 143; *Bottum* v. *Railway Co.*, 72 S. C. 375 (51 S. E. 985; 2 L. R. A. [N. S.] 773, 110 Am. St. Rep. 610, 5 Ann. Cas. 118); *Gassman* v. *Railroad Co.*, 207 App. Div. 15 (201 N. Y. Supp. 740).

Defendant on its cross appeal further claims that there was no competent testimony whatsoever to support the findings in regard to the amount of loss on account of the desks, filing cabinets and file holders. The only oral testimony introduced by plaintiffs in regard to these items was excluded on the ground of hearsay. However, a letter in which defendant stated it would be glad to pay the amount claimed for the loss of the two desks at $15 each and the filing cabinets at $42 each was introduced. There was no reservation in this letter as to these items. It was written after plaintiff was asked to send its claim. Defendant, however, states that the letter was sent for the purpose of compromising the claim. There is no testimony to that effect nor is

the letter a conditional offer.   We believe the court was correct in finding the damages for the loss of the desks and filing cabinets.

There is no competent testimony to show the value of the file holders, for the loss of which a small amount is claimed.   The file holders might have been old and worn or might have referred to customers of plaintiff who were no longer in business.

The plaintiff is entitled to recover $30 for the loss of the two desks; $84 for the loss of the two metal filing cabinets; and $127.43, as admitted, for reconditioning and labor.   This makes a total sum of $241.43.   Plaintiff is entitled to interest from January 11, 1940, the date the judgment was rendered in the trial court.   Defendant will recover costs.

The judgment as originally entered is modified and the case remanded to the trial court to enter judgment in accordance with this opinion.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, McALLISTER, and WIEST, JJ., concurred.