NOBLE v ROADWAY EXPRESS, INC

Docket No. 85642. Submitted April 17, 1986, at Detroit. Decided July 7, 1986. Leave to appeal applied for.

Leo P. Noble and Carolyn Noble brought an action in the Wayne Circuit Court against Roadway Express, Inc., Fred Hartel, and others, seeking damages for injuries sustained by Leo Noble when a gasoline pump fell on him while it was being delivered to plaintiff's employer by Hartel, a driver for Roadway Express. Roadway Express and Hartel moved for a summary judgment asserting two bases: (1) that, under applicable Interstate Commerce Commission regulations, the defendants had no duty to unload the freight and, under *Rockwell v Grand Trunk W R Co,* 264 Mich 626 (1933), based upon the regulations, Hartel therefore became the loaned servant of the plaintiff's employer; and (2) that the plaintiff's injury was not proximately caused by any negligent act on the part of the defendants. The trial court, Joseph B. Sullivan, J., granted summary judgment, ruling in favor of the defendants on the first basis but against the defendants on the second. Plaintiffs appeal from the first aspect of the trial court's ruling. The defendants cross-appeal from the second. *Held:*

1. The *Rockwell* decision is distinguishable from this case. The Court of Appeals instead followed the generally accepted control test for determining whether the loaned servant doctrine applied in this case. There was evidence that the defendant driver was at least under the partial control of his employer at the time of the unloading. The defendant carrier is therefore liable for any negligence committed by the driver in the course of the unloading under the doctrine of respondeat superior. The trial court erred in granting summary judgment, based on *Rockwell,* in favor of the defendants.

2. The defendants' argument that the carrier had no interest at all in the unloading was found to be without merit.

3. The Court of Appeals determined, in regard to defendants'

REFERENCES

Am Jur 2d, Actions § 68.

Am Jur 2d, Carriers §§ 33 *et seq.*

Am Jur 2d, Master and Servant §§ 411 *et seq.*

Imputation of servant's or agent's contributory negligence to master or principal. 53 ALR3d 664.

argument that as a matter of law plaintiff's injuries were not a proximate result of negligent acts committed by the defendants and therefore a summary judgment should have been granted on this ground as well, that it is not impossible for plaintiffs' negligence claim to be supported at trial. The trial court properly denied a summary judgment on this ground.

Reversed in part, affirmed in part and remanded.

1. Commerce — Interstate Commerce Commission — Remedies — United States Code.

The Interstate Commerce Commission is given rule-making authority over the rates, classifications, rules and practices of common carriers; the tariffs of the commission become part of a contract between the carrier and the consignee; except as otherwise presented in the Interstate Commerce Act, the remedies therein are in addition to those provided under state law (49 USC 10103, 10702).

2. Master and Servant — Torts — Respondeat Superior — Control Test.

The control test for determining whether the loaned servant doctrine applies in a case is whether in the particular service in which the servant is engaged or requested to perform he continues to be liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired or who requests his services; it is not so much the actual exercise of control as the right to exercise control; to escape liability the original master must resign full control of the servant for the time being; it is not sufficient that the servant is partially under the control of a third party.

3. Actions — Proximate Cause — Intervening Acts — Questions of Fact.

Proximate cause is ordinarily an issue of fact for the jury; whether an intervening negligent act of a third person constitutes a superseding proximate cause is also a question for the jury.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Michael L. Pitt*), for plaintiffs.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C.* (by *Robert D. Brignall*), for defendants.

Before: M. J. Kelly, P.J., and Shepherd and C. W. Simon,* JJ.

Shepherd, J. This is an appeal and cross-appeal from an order of summary judgment under GCR 1963, 117.2(3) in favor of defendants Fred Hartel and Roadway Express, Inc. The plaintiffs' complaint stated one count of negligence against each of the defendants. We reverse the summary judgment order and remand for further proceedings.

On May 20, 1983, defendant Hartel delivered six gasoline pumps to Eastside Marathon. The delivery was made in the course of his employment with defendant Roadway Express. Each of the pumps weighed in excess of five hundred pounds. Roadway's truck was apparently not equipped with a liftgate and Eastside Marathon had no facilities for lifting the load out of the truck. The pumps were therefore slid over the back edge of the truck bed to plaintiff Leo Noble and other waiting employees of Eastside Marathon.

According to plaintiff's deposition, Hartel broke the bottom metal band on the carton containing one of the pumps as he slid the container off the back of the truck. When the pump inside then began to slide out of the cardboard container, it was pushed back up onto the bed of the truck, where it was turned around. The pump was then unloaded upside down. According to plaintiff, Hartel gave him a two-wheeled dolly and instructed him to move the upside-down pump so that the last pump could be unloaded. The upside-down pump was top-heavy and when plaintiff attempted to move it, it fell on him, causing serious injury to his right ankle.

Defendant Hartel's deposition testimony contradicted the version of events given by plaintiff in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

certain respects. Hartel testified that he assisted the Marathon station employees in unloading the containers. He believed that the packaging band was broken before he attempted to unload the pump and that two gas station employees had flipped the pump over after it was unloaded so that it was right-side up when plaintiff attempted to move it.

Plaintiffs filed suit on September 7, 1983. On February 21, 1985, defendants Hartel and Roadway moved for summary judgment. The defendants asserted two bases for summary judgment: (1) that, under applicable Interstate Commerce Commission regulations, the defendants had no duty to unload the freight and, under *Rockwell v Grand Trunk W R Co,* 264 Mich 626; 250 NW 515 (1933), based upon the ICC regulations, Hartel therefore became the loaned servant of the plaintiff's employer; and (2) that the plaintiff's injury was not proximately caused by any negligent act on the part of the defendants. The trial court granted summary judgment, ruling in favor of the defendants on the first basis, but against the defendants on the second. The plaintiffs appealed from the first aspect of the trial court's ruling. The defendants cross-appealed from the second.

I

The defendants essentially argue that their liability for any negligence on the part of Hartel was proscribed by contractual terms imposed under the ICC regulations. The defendants' argument suggests that the policy objectives of the ICC require that no duty on their part be found in the instant case. The ICC is given rule-making authority over the rates, classifications, rules and practices of common carriers. 49 USC 10702. The regulation at issue provides:

> When freight in a single container, or freight secured to pallets, platforms or lift truck skids, or freight in any other authorized form of shipment (1) weighs 500 pounds or more per package or piece, or (2)' if the greatest dimension exceeds 8 feet or the greatest and intermediate dimension each exceeds 4 feet, loading shall be performed by the consignor and unloading shall be performed by the consignee. On request of consignor or consignee, the truck driver will assist the consignor or the consignee in loading or unloading. [National Motor Freight Classification Item 568(a).]

As noted by the defendants, the tariffs of the icc become part of the contract between the carrier and the receiver (consignee). *Watson-Higgins Milling Co v Pere Marquette R Co,* 328 Mich 5, 8-9; 43 NW2d 43 (1950). On the other hand, the parties agree that, except as otherwise presented in the Interstate Commerce Act, the remedies therein are in addition to those provided under state law. 49 USC 10103.

Against that statutory background, the Michigan Supreme Court decided *Rockwell, supra.* The *Rockwell* plaintiff was injured while assisting an employee of the defendant railroad in unloading a consignment of I-beams from a flatcar. *Rockwell, supra,* pp 627-628. The jury found that the employee of the railroad was negligent in his operation of a crane and awarded damages to the plaintiff. The *Rockwell* majority reversed, noting that icc regulations required the plaintiff's employer, as consignee or owner, to unload the I-beams. The Court reasoned:

> Thus, in the instant case, the contract between the shipper and carrier places the obligation of unloading the carload lot upon the shipper or consignee. Had the parties contracted that the carrier without additional charge should unload

the shipment, it would have been a violation of interstate commerce regulations and subjected them to the penalty provided. Thus, as a matter of law, as well as a matter of contract, in this interstate shipment the duty of unloading devolved solely upon the consignee. When plaintiff contracted to truck these I-beams from the place of delivery by the carrier to the bridge site, he stepped into the place of the consignee, who was charged with the duty of unloading. At his option he might or might not take advantage of the conveniences afforded by the carrier in unloading the shipment. While in no way obligated to do so, in the instant case the defendant had provided at Flint a Gantric crane, the use of which, together with an operator, was tendered to shippers to aid them in unloading heavy articles. To hold that the defendant railroad company in so doing was discharging a part of its duty or its contract as a carrier would be to hold that it was acting in violation of interstate commerce regulations. The record in this case will not sustain a conclusion that the carrier contracted to unload this shipment. Instead, in the face of the interstate regulation, the only justifiable conclusion is that the defendant carrier loaned this unloading device and its employee in operating the same to the consignee, in whose place plaintiff was acting in receiving the shipment. [*Rockwell, supra,* pp 637-638.]

*Rockwell* precluded vicarious liability on the part of the defendant railroad based on the applicable ICC regulation. However, the regulation at issue in *Rockwell* was significantly different than the regulation applicable in the present case. The applicable ICC regulation in *Rockwell* provided:

Owners are required to load into or on cars freight for forwarding by rail carriers and to unload from cars freight received by rail carriers carried at carload ratings. [*Id.,* 636.]

In the present case, as set forth in full above, the applicable regulation also provides for unloading by the consignee but includes the following requirement that the carrier's employee assist in the unloading:

> On request of consignor or consignee, the truck driver will assist the consignor or the consignee in loading or unloading. [National Motor Freight Classification Item 568(a).]

The requirement in the regulation at issue that the carrier's agent assist in the unloading of the freight if requested clearly distinguishes the present case from *Rockwell*. The modern regulation provides a contractual obligation for the carrier to assist in unloading. The *Rockwell* decision rests on the finding that under the applicable regulation the carrier could not have a contractual obligation to unload. In light of our conclusion that *Rockwell* is distinguishable, we find it unnecessary to express an opinion on the continuing validity of that opinion. Instead, we will follow the generally accepted control test for determining whether the loaned servant doctrine applies in the present case. See *Nichol v Billot,* 406 Mich 284; 279 NW2d 761 (1979).

In *Hartford Ins Group v Mile High Drilling Co,* 96 Mich App 455; 292 NW2d 232 (1980), the defendant borrowed a crane operator from another contractor at the construction site of the Port Huron tunnel project. An accident ensued, raising the issues of respondeat superior and the crane operator's master at the time. Citing *Nichol,* this Court applied the control test to determine the crane operator's master at the time of the accident. *Hartford, supra,* p 460. The *Hartford* Court, quoting *Janik v Ford Motor Co,* 180 Mich 557, 562;

147 NW 510 (1914), explained the control test as follows:

> The test is whether in the particular service which he is engaged or requested to perform he continues liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired, or who requests his services. It is not so much the actual exercise of control which is regarded, as the right to exercise such control. To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under control of a third person. [*Hartford, supra,* p 461.]

Thus, the initial question in determining whether summary judgment may be granted under GCR 1963, 117.2(3)—no genuine issue of material fact—is whether there is any evidence from which a trier of fact could conclude that Roadway Express had not resigned full control over its employee, Hartel. Clearly in this case plaintiff did come forward with evidence from which it can be inferred that Hartel continued to act on behalf of the carrier during the unloading. Thus, the trial court erred in granting summary judgment in favor of defendants. In fact, partial summary judgment on the issue of control might even be appropriate in favor of plaintiffs based on the applicable ICC regulation. Arguably it might be said that the ICC regulation set forth above does not give exclusive control over the driver to the consignee (plaintiff's employer), but, rather, the regulation obligates the carrier, through its driver, to assist in the unloading. Thus, the carrier as a matter of law could not resign full control over its driver. On remand, the parties and the trial court are free to address this issue. We also find to be without merit

defendant's argument, injected at oral argument, that the carrier had no interest at all in the unloading. The carrier clearly has an economic interest in having its trucks unloaded quickly and efficiently.

We conclude that there was evidence that the defendant driver was at least under the partial control of his employer at the time of the unloading and defendant carrier would therefore be liable for any negligence committed by the driver in the course of the unloading under the doctrine of respondeat superior. The trial court erred in granting summary judgment under GCR 1963, 117.2(3), based on *Rockwell,* in favor of defendants driver and carrier.

II

Defendants argue in the alternative in their cross-appeal that as a matter of law plaintiff's injuries were not a proximate result of negligent acts committed by defendants and therefore summary judgment under GCR 1963, 117.2(3) should have been granted on this ground as well. Although defendants made a number of assertions which could only be resolved at trial, the gist of their argument seems to be that their responsibility ceased once the pumps safely reached the ground. Defendants have cited no authority which supports this argument.

Proximate cause is ordinarily an issue of fact for the jury. *McKee v Dep't of Transportation,* 132 Mich App 714, 722; 349 NW2d 798 (1984). Whether an intervening negligent act of a third person constitutes a superseding proximate cause is also a question for the jury. *May v Parke, Davis & Co,* 142 Mich App 404, 419; 370 NW2d 371 (1985). In

the present case there was evidence that Hartel directed the unloading and moving of the pump in question, that he broke the bottom metal band in the container, that he unloaded it upside down, and that he then handed plaintiff a dolly and told him to move it. When plaintiff attempted to move it, the top-heavy pump fell onto him. After reviewing this record, we are not satisfied that it is impossible for plaintiffs' negligence claim to be supported at trial. Whether the evidence will establish that defendant driver's conduct fell below the general standard of care and, if so, whether his conduct was the proximate cause of plaintiff's injury are questions of fact for the jury. Accordingly, the trial court properly denied summary judgment on this ground.

Reversed in part, affirmed in part, and remanded for further proceedings.