## CATEN v. SALT CITY MOVERS & STORAGE CO., Inc.

### No. 251.

Circuit Court of Appeals, Second Circuit.

May 14, 1945.

Costello, Cooney & Fearon, of Syracuse, N. Y. (M. Harold Dwyer, of Syracuse, N. Y., of counsel), for plaintiffs-appellees.

Nathan E. Zelby, of New York City, and John T. Deegan, of Syracuse, N. Y. (Julius Zizmor, of Brooklyn, N. Y., of counsel), for defendant-appellant.

Before SWAN, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiffs arranged with the defendant to ship their household goods and some of their personal effects from Gouverneur, N. Y., to Pawtucket, R. I., on a motor van owned and operated by the defendant, a common carrier in interstate commerce by motor vehicle. The van caught fire en route when its brakes became overheated because of faulty adjustment and the shipment was totally destroyed. This suit was brought in the District Court for the Northern District of New York to recover the value of the property, federal jurisdiction under Part II of the Interstate Commerce Act, 49 U.S.C.A. § 301 et seq., being clear and undisputed.

Two causes of action were alleged. One was based on the liability of the defendant as a common carrier for the value of property which it accepted for transportation and failed to deliver as agreed, and the other was for the value of property in the possession of the defendant for carriage which was destroyed by fire through its negligence. The court instructed the jury that the defendant was liable for the actual loss sustained by the plaintiffs and submitted to the jury only the question of amount. The jury found the damages and returned a verdict on which judgment for the plaintiffs was entered and from this judgment the defendant has appealed.

In the review of a judgment on a directed verdict, conflicts in the evidence are to be resolved in favor of the appellant. Slocum v. Erie R. Co., 2 Cir., 47 F.2d 216; Kuper v. Betzer, 8 Cir., 115 F.2d 842. Accepting as true the evidence most favorable to the defendant, the jury could have found substantially as follows:

The defendant, whose main office is in Syracuse, N. Y., undertook to transport the plaintiffs' property following the receipt of a letter from Robert Caten containing a list of the goods and a request for the approximate cost of the service. The defendant replied by letter giving an estimate of the weight and of the cost figured upon that basis. Later the goods were loaded on the defendant's van at Gouverneur and taken to Syracuse to be weighed. After the weight was ascertained, Mr. Nichols, the defendant's president, told Caten by telephone that it was 4650 pounds and asked what valuation to put on the property, saying, "You are allowed thirty cents a pound under the Government bill of lading." Caten replied that he carried insurance on it to the amount of three thousand dollars. Then Nichols told him that two thousand dollars in insurance in addition to the thirty cents per pound liability would cost five dollars, making the entire charge $153.26. Caten said he wanted Nichols to procure the insurance and at once sent the defendant a check for $153.26, which was duly received.

There was no declaration of value by the shippers, other than as above, and no bill of lading or receipt was issued and delivered to the shippers, although a bill of lading was made out in which the rate was based on a valuation of thirty cents per pound. That bill was carried by the van when it started for Pawtucket and it was destroyed by the fire without having been seen by the shippers.

The issues presented are whether the defendant is liable for the full value of the goods destroyed or only for the lesser valuation on which the rate charged for transportation was based, and whether there was reversible error in the reception and exclusion of evidence.

There is no dispute about certain essential facts which in addition to those already stated are, we think, decisive on the question of the defendant's liability for full damages. It was a common carrier by motor vehicle which was expressly authorized or required by the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, and it had established and did maintain such rates at the time it accepted the plaintiffs' property for transportation. Moreover, we shall assume for the purposes of this appeal that the defendant's tariffs and schedules were duly filed with the Interstate Commerce Commission and that they showed that the rate quoted to and paid by the

plaintiffs was an alternative one and was based upon a valuation to which the carrier's liability was to be limited. For the purpose of showing the facts that we have just assumed, the defendant's schedules were offered in evidence but they were excluded. If this exclusion was erroneous, see American Railway Express Co. v. Daniel, 269 U.S. 40, 46 S.Ct. 15, 70 L.Ed. 154, the error was harmless in view of our conclusion that the manner of the shippers' valuation did not fulfill the statutory condition precedent to the formation of a valid contract for limitation of the carrier's liability.

Section 20(11) of the Interstate Commerce Act, 49 U.S.C.A. § 20(11), applies to the defendant by virtue of § 219 of that statute, 49 U.S.C.A. § 319. It provides, in so far as here pertinent, as follows:

"Any common carrier * * * subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier * * * from the liability hereby imposed; and any such common carrier * * * shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it * * *, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void: * * * Provided, however, That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply * * * to property * * * received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to be a violation of section 10 of this chapter; and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agreed upon."

After passage of the Carmack Amendment in 1906, 34 Stat. 593, both interstate carriers and shippers were chargeable with knowledge of the content of the schedules filed with the Interstate Commerce Commission and were conclusively presumed to have contracted according to them in respect to rates and liability unless there was proof of rebating or false billing. Atchison, Topeka & Santa Fe R. Co. v. Robinson, 233 U.S. 173, 34 S.Ct. 556, 58 L.Ed. 901; Great Northern R. Co. v. O'Connor, 232 U.S. 508, 34 S.Ct. 380, 58 L.Ed. 703; Louisville & Nashville R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853, L.R.A. 1915E, 665. Where no bill of lading was issued the terms of the uniform bill of lading controlled. New York Central R. Co. v. Lazarus, 2 Cir., 278 F. 900.

But after the first Cummins Amendment, adopted in 1915, no interstate common carrier could lawfully contract for any limited liability whatever unless the goods shipped were "hidden from view by wrapping, boxing, or other means, and the carrier [was] not notified as to the character of the goods." In that event, however, the carrier could "require the shipper to specifically state in writing the value of the goods, and the carrier shall not be liable beyond the amount so specifically stated." 38 Stat. 1196. The privilege of limiting its liability by contract was thus closely circumscribed and valuation in writing by the shipper was made a condition precedent to the carrier's right to make limitation agreements at all. Otherwise the carrier, required by the statute to issue a receipt or bill of lading for the goods, was made liable for the full value of the goods whether or not it had issued a

receipt or bill of lading notwithstanding any representation or contract that the goods were of a lesser value.

■ The second Cummins Amendment, adopted in 1916, 39 Stat. 441, made further changes which are reflected in the above quotation from § 20(11) of the Act. It was made obligatory upon every initial common carrier accepting property for interstate shipment to issue a receipt or bill of lading therefor and liability was imposed upon it for the full actual loss or damage to the property sustained during carriage by it or by a connecting carrier under a through bill of lading. So as the law now stands the only limitation of liability permitted is conditioned upon a compliance with the proviso of which the material part has already been quoted. Any attempt to limit liability is prohibited except upon a declaration of value by the shipper in writing or upon a released value agreed to in writing. Although action in writing by the shipper is plainly required, his signature is not necessary but it does furnish good evidence that he did declare or agree in writing. Receipt of the writing by the shipper and his action upon it are adequate proof that he has assented to its terms and has made it the written agreement of the shipper and carrier. American Railway Express Co. v. Lindenburg, 260 U.S. 584, 43 S.Ct. 206, 67 L.Ed. 414. Compare, Girard Insurance & Trust Co. v. Cooper, 162 U.S. 529, 16 S.Ct. 879, 40 L.Ed. 1062.

■■ But in the instant case there was no writing received and acted upon by the shippers which contained any declared or released valuation. The only writing they were shown to have received was the letter of the defendant's president stating the cost of the proposed carriage on the basis of an estimate of the weight of the goods and making no reference whatever to their value. All that took place respecting valuation occurred in the two telephone conversations, one after the shipment was weighed in Syracuse before the van left and the other after it had been destroyed by fire, the latter being too late, of course, to count as a valuation upon which the rate was based. Unless the carrier can comply with the requirements of the statute merely by putting into writing what the shipper has told it orally and then keeping that writing without giving the shipper a chance to verify it and acquiesce in it if found correct or to repudiate it if found incorrect, there was no compliance shown here. Obviously no such loose interpretation of the statute is permissible. It seems plain that nothing was done by these shippers in writing, or in respect to any writing, which had anything whatever to do with a valuation of their property for shipment under one rate or any other. Everything they did in connection with that matter was done orally. To permit a carrier, without any action whatever by the shipper in respect to valuation in writing, to limit its liability on the basis of declared or released value on which the rate was charged would be to ignore entirely the statutory requirement that the shipper must make the declaration or agreement in writing, and nullify that part of the proviso.

The statute makes it abundantly clear that the carrier's common law liability for full actual damages, whether or not caused by its negligence, is imposed when it accepts goods for carriage, unless a certain specified agreement limiting that liability has been made as the result of an equally certain specified action by the shipper in respect to a voluntary valuation of his goods. Even then the carrier is not permitted to contract against liability for its own negligence. Only by giving the shipper an opportunity to choose between higher and lower rates based upon valuation can the carrier place the shipper who has selected a lower rate in the prescribed manner in the position where he is estopped to assert loss or damage to an amount in excess of the declared valuation upon which the rate was fixed. Boston & Maine R. Co. v. Piper, 246 U.S. 439, 38 S.Ct. 354, 62 L.Ed. 820, Ann.Cas.1918E, 469; Hart v. Pennsylvania R. Co., 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed. 717; Union Pacific R. Co. v. Burke, 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656. Here nothing was done by the shippers which amounted to written action by them as to valuation, and any agreement limiting the defendant's liability to less than the actual value was void. Therefore it was correct for the district court to instruct the jury that the defendant was liable for the full value of the plaintiffs' goods.

In proving the actual value of their property destroyed in the fire, the plaintiffs testified as to the kind, number and condition of the articles lost and over the objection of the defendant were permitted to state their value. Some of these articles were wearing apparel which the witnesses had bought for themselves and some were household furniture and furnishings which they also

had purchased, but to a large extent they were presents, mostly wedding presents. The plaintiffs were a young, married couple without much knowledge of the value of such property, and to a large extent their valuations were based upon inquiries made in person or by letter as to prices charged for the articles by the stores at which they had been purchased or as to prices charged in similar stores for like property. This was not very accurate evidence of the value of the particular articles lost, and the jury must have so regarded it for it awarded as actual damages about half of the total amount which the plaintiffs testified was the value of their property. We are concerned, however, not with the weight of this evidence but with its admissibility.

■ Ordinarily an owner of personal property who is familiar with its quality and condition is credited with having some knowledge of its value and may testify to that. Meyer v. Adams Express Co., 240 Mass. 94, 132 N.E. 672; Jones, Commentaries on Evidence, 3rd Ed., § 1266. He need not prove that he is an expert qualified to speak on the subject. Gorman v. Park & Tilford, 2 Cir., 100 F. 553; Union Pacific R. Co. v. Lucas, 8 Cir., 136 F. 374; Chicago & Erie R. Co. v. Ohio City Lumber Co., 6 Cir., 214 F. 751; Baltimore American Ins. Co. v. Pecos Mercantile Co., 10 Cir., 122 F. 2d 143. Proof of value by the testimony of an owner of household goods and personal effects is well within this rule, as we have already held in Barrett v. Fournial, 2 Cir., 21 F.2d 298, where the property had been lost while in the possession of the defendant. We consider that case decisive as to the competence of the plaintiffs as witnesses.

■ In addition to giving their own testimony as to values, the plaintiffs were allowed to put in evidence a letter which Mrs. Caten had received from a store which sold glassware of the same kind and pattern as that of some which was destroyed in which the sales price of such articles by the dozen was given. There is nothing to indicate that it was not the bona fide offer of a reliable dealer to sell those articles at the prices stated or that they were not the actual current prices. Nor was there any contention that those prices had changed since the articles were destroyed, several months before the date of the letter. We think this letter was like a price list issued by a dealer in such property and that it was admissible evidence of value. In re Cliquot's

Champagne, 3 Wall. 114, 18 L.Ed. 116; Baltimore American Ins. Co. v. Pecos Mercantile Co., supra. The value of such property may be shown by evidence of the prices at which it can be purchased in the places where it is usually bought. Where those prices are given either orally or in writing, under circumstances which indicate that the prices current in the business of the dealer have been stated, they are admissible and are to be considered and weighed by the jury in connection with all the other evidence on the subject. In re Cliquot's Champagne, supra.

Other exceptions briefed and argued by the appellants have been examined and found to be without merit.

Judgment affirmed.