THOMAS ELECTRONICS, INCORPORATED, Plaintiff,

v.

H. W. TAYNTON COMPANY, Inc., Defendant.

Civ. A. No. 9621.

United States District Court
M. D. Pennsylvania.

Dec. 15, 1967.

---

McNerney, Page, Vanderlin & Hall, Williamsport, Pa., for plaintiff.

Warren, Hill, Henkelman & McMenamin, Scranton, Pa., for defendant.

## FINDINGS OF FACT
## CONCLUSIONS OF LAW
## AND DISCUSSION

FOLLMER, District Judge.

This case was tried to the court without a jury. The defendant produced one witness whose testimony was taken, the parties filed a Stipulation of Facts and, subsequent to the trial, both parties filed Suggested Findings of Fact and Conclusions of Law. From the said Stipulation, Findings, Conclusions, briefs and oral arguments, the court makes the following:

### FINDINGS OF FACT

1.  The plaintiff, Thomas Electronics, Incorporated, is a New Jersey corporation, having its principal office at 100 Riverview Drive, Wayne, New Jersey.

2.  The defendant, H. W. Taynton Company, Inc., is a Pennsylvania corporation, having its principal office at 40 Main Street, Wellsboro, Pennsylvania, and is engaged in the business of transporting articles by truck as a common carrier.

3.  On December 27, 1965, the plaintiff delivered to the defendant at Passaic, New Jersey, three glass cathode ray tubes to be carried by defendant, as a common carrier, to Corning Glass Company at Corning, New York. At that time an employee of the plaintiff issued a Bill of Lading to defendant's truck driver, partially made out as described more fully in paragraph 4 hereof. The Bill of Lading involved is a Uniform Bill of Lading commonly used in interstate freight shipment by motor vehicle.

4.  Plaintiff's agents filled in the Bill of Lading with this description of goods: "three ctn. (3-glass bulbs)—300 lbs." Defendant's rate clerk then filled in the rate of $5.43 per hundred weight. This rate was arrived at by using Item #87820 shown in the National Motor Freight Classification which was effective on the date of shipment. The NOI portion of this description means "not otherwise indicated," which in turn means that the Bill of Lading did not indicate to the rate clerk that a different rating should be used. No agreed or declared value was filled in by either of the parties, although space was provided therefor on the Bill of Lading.

5.  In consideration of freight charges of $16.29, defendant accepted the property for shipment. Payment was made

in the following manner: after defendant accepted the goods for shipment, it determined the shipping rate and billed the plaintiff. During the time which elapsed between accepting the goods and billing, the goods were being carried by the defendant. At no time did the defendant inquire into the actual value of the goods being shipped.

6. When the goods arrived at their destination, it was found that a cathode ray tube in one of the cartons was damaged and was without salvage value.

7. The value of the tube immediately prior to shipment was $3,449.80 and its destruction resulted in a loss to the plaintiff in the same amount.

8. Said tube was packed in a corrugated container with two inches of excelsior on all sides. Said container and packaging were specifically designed by Corning Glass Works for this type of cathode ray tube.

9. Defendant's employee prepared an Inspection Report of damage, dated January 3, 1966, in which he acknowledged that in his opinion the tube had been adequately packed and that there would be no salvage value.

10. Plaintiff presented timely claim of loss which was rejected by the defendant.

11. Under Interstate Commerce Commission Rules and Regulations the defendant is a signatory to the National Motor Freight Classification on file with the Interstate Commerce Commission. The portion of that classification which would fix the tariff for the shipment involved herein is Tariff No. 1, Middle Atlantic Conference. The Interstate Commerce Commission "Carrier Code" for H. W. Taynton Company, Inc., is T–3900 and the certificate or docket number is 109,821. The rate referred to in paragraph 4 was arrived at by reference to Item #87820 of the classifications set forth in said classification.

12. Section 5 of the terms set forth on the back of the Bill of Lading reads: "No carrier hereunder will carry or be liable in any way for any documents, specie, or for any articles of extraordinary value not specifically rated in the published classification or tariffs unless a special agreement to do so and a stipulated value of the articles are endorsed hereon." Rule 15, Section 2 of the National Motor Freight Classification states that articles of extraordinary value will not be accepted for shipment.

13. No value was declared in writing by the shipper, Thomas Electronics, Inc., prior to shipment.

14. No value was agreed upon in writing as the released value of the property, prior to shipment.

15. No evidence was presented by H. W. Taynton, Inc., to indicate that it was expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value of goods shipped.

16. Plaintiff did nothing to conceal the actual value of the tube from defendant.

17. The evidence fails to show that the tube in question was more fragile than much of the other glassware defendant carries.

18. The evidence fails to show that defendant is not physically equipped to carry glassware equally as fragile as the cathode ray tube in question.

19. Defendant has not promulgated a definition of "extraordinary value" nor did it present such a definition promulgated by anyone else.

20. Defendant could have made itself aware of the extent of its liability merely by instructing its employees not to accept shipments unless a value was declared on the Bill of Lading.

21. Defendant, by Mr. Smith's[1] directive issued almost a year after the initial breakage had occurred, did instruct its employees not to accept shipments from plaintiff unless the Bill of Lading contained a declared value.

---

1. Defendant's assistant terminal manager and sole witness.

22. Although defendant frequently carries glassware, it does not customarily inquire into the value of the glass being shipped.

23. Prior to the issuance of its directive, defendant never requested plaintiff to state the value of the goods being shipped.

24. Prior to the issuance of its directive, defendant made no effort to learn the value of the goods being shipped.

25. Defendant has not shown that plaintiff was negligent.

26. Defendant has not shown that defendant was free of negligence, or that the breakage occurred as a result of one of the excepted causes.

## CONCLUSIONS OF LAW

■ 1. The burden of full liability for damages to goods is placed upon a common carrier in Interstate Commerce unless the carrier shows that it has fully complied with the statutory requirements for limiting its liability.

2. The Interstate Commerce Act, 2nd Cummins Amendment (Act of August 9, 1916), 49 U.S.C. § 20(11), as amended, prevents a carrier from limiting its liability except by maintaining rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value.

■ 3. The shipper establishes a prima facie case when it has shown delivery to the carrier in good condition, arrived in damaged condition and the amount of damages.

■ 4. Paragraph 5 of the Bill of Lading, stating that the carrier is excluding liability for goods of extraordinary value, is merely an attempt to limit liability in a manner which is prohibited by Section 20(11) of the Interstate Commerce Act.

■ 5. Unless the carrier either rejects the shipment or fully complies with the requirements of Section 20(11) of the Interstate Commerce Act, it remains fully liable for all goods it carries, regardless of their value.

■ 6. Shippers have no legal duty to state the value of their goods on the Bill of Lading and their failure to do so will not destroy the protection afforded them by Section 20(11) of the Interstate Commerce Act.

■ 7. As a result of the legislative fiat contained in Section 20(11) of the Interstate Commerce Act, defendant is liable to plaintiff for the full value of the goods shipped by plaintiff.

8. Plaintiff is entitled to judgment in its favor against defendant in the sum of $3,449.80.

## DISCUSSION

Title 49, U.S.C. § 20(11), provides in part as follows:

Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation * * shall be liable * * * for any loss, damage, or injury to such property caused by it * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability imposed; and any such * * * transportation company so receiving property for transportation * * * shall be liable to the lawful holder of said receipt or bill of lading * * * whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such * * * bill of lading, * * * and any such limitation, without respect to the manner or form in which it is sought to be

made is declared to be unlawful and void: * * * Provided, however, That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, * * * shall not apply, * * * to property, * * * received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, * * *.

In Caten v. Salt City Movers & Storage Co., Inc., 149 F.2d 428, 432 (2nd Cir. 1945), the court held:

> * * * Any attempt to limit liability is prohibited except upon a declaration of value by the shipper in writing or upon a released value agreed to in writing. * * *

Neither of these conditions were met in this case.

In Caten, supra, the court further stated:

> The statute makes it abundantly clear that the carrier's common law liability for full actual damages, whether or not caused by its negligence, is imposed when it accepts goods for carriage, unless a certain specified agreement limiting that liability has been made as the result of an equally certain specified action by the shipper in respect to a voluntary valuation of his goods. Even then the carrier is not permitted to contract against liability for its own negligence. Only by giving the shipper an opportunity to choose between higher and lower rates based upon valuation can the carrier place the shipper who has selected a lower rate in the prescribed manner in the position where he is estopped to assert loss or damage to an amount in excess of the declared valuation upon which the rate was fixed. (Citations omitted). Here nothing was done by the shippers which amounted to written action by them as to valuation, and any agreement limiting the defendant's liability to less than the actual value was void. * * * 149 F.2d at 432.

The Interstate Commerce Commission has stated that Section 20(11) makes motor carriers "insurers of property accepted for transportation and their liability can be limited only under rates authorized by the Commission, which are dependent on values declared in writing by the shipper or agreed upon in writing as the released value of the property." Rates on Articles of Exceptional Value, 44 M.C.C. 225, 226 (1944).

In an article in the February 1965 issue of I.C.C. Practitioners' Journal, at page 419, the author wrote:

> * * * Further, under Section 5 of the bill of lading, the carriers say that they will not accept for transportation or otherwise be responsible for articles of extraordinary value not rated specifically. Nevertheless, not having taken any of the precautionary measures open to them and having, in fact, accepted the shipment, they are responsible for the full value of the shipment, regardless of how high this value is, since Section 20 (11) says that no rule, regulation, contract or provision will free them from this liability unless the goods move on released value rates authorized or ordered by the I. C. C. with the 'rates being tied to the release,' signifying lower rates for lower claim liability.

Plaintiff is entitled to judgment in its favor.