470 P.2d 926 (1970)
ALLIED VAN LINES, INC., Plaintiff in Error,
v.
Frank SMITH and Gail Smith, Defendants in Error.
No. 70-014. (Supreme Court No. 22751.)
Colorado Court of Appeals, Div. II.
March 10, 1970.
Dayton Denious, William P. Denious, Robert J. Kapelke, Denver, for plaintiff in error.
*927 Louis F. Pell, Denver, for defendants in error.
Selected for Official Publication.
DUFFORD, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under the authority vested in the Supreme Court.
The plaintiff in error was defendant below and shall be referred to in this opinion as "defendant" or as "Allied." The defendants in error, plaintiffs below, shall be designated herein as "plaintiffs" or by name.
The defendant is an interstate carrier of household goods operating under a tariff which is filed with the Interstate Commerce Commission. The tariff provides in part that "articles of peculiarly inherent or extraordinary value" will not be accepted for shipment. It specifies that: "Should such articles come into the possession of the carrier without its knowledge, responsibility for safe delivery will not be assumed." The tariff also states "Each shipping piece or package and contents thereof shall constitute one article."
In December of 1964, plaintiffs entered into a contract with the defendant whereby the defendant undertook to transport the plaintiffs' household goods from Ogden, Utah to Littleton, Colorado. The contract of carriage was embodied in a standard household goods bill of lading, as required by the defendant's tariff. The bill of lading carried on its face a noticeable requirement that the shipper make a declaration of extraordinary valued articles. It further excluded the carrier from liability for any such articles not listed. The plaintiffs did not list any articles on the bill of lading. They did declare the value of the entire shipment to be $8,000.00. Shortly after the goods were delivered in Littleton, Colorado, the plaintiffs claimed that a carton containing "heirloom" silver and other items was missing and brought the action against the defendant to recover the value thereof. At trial Mrs. Smith testified that the value of the contents of the missing carton totaled $4,969.13. The remainder of the Smiths' household goods was appraised at $1,014.00. Other evidence disclosed that there were some 218 packages, boxes, and pieces in the shipment. The trial court found from Mrs. Smith's testimony the value of the items in the missing carton to be $4,969.13. It also ruled that the items of "silver" were household goods as defined by Section 1, Item 40 of defendant's tariff and that there was no requirement under the tariff or bill of lading that the silver be listed as an item of extraordinary value. Judgment was entered for the plaintiffs in the amount of $4,696.13 for the missing carton and $60.17 for damage to furniture and costs.
Defendant asserts as its first ground for reversal that the trial court erred in finding that the carton of silverware did not fall within the scope of the provisions in the tariff and bill of lading which excluded the carrier from liability for its loss. In this case, such argument is sound, and it will be unnecessary to consider the other grounds urged for reversal.

1. NATURE OF SHIPPED ARTICLE
We concur in the trial court's finding that as a general rule silverware and silverplate, having as their primary and principal purpose usage within a home, constitute "household goods." We are nonetheless of the opinion that in this case the carton containing the silver was an "article of extraordinary value." The record discloses that some 218 articles were shipped; the one carton containing the silver was valued by the plaintiffs at $4,969.13; and all of the remainder of their household goods was appraised at $1,014.00. Two hundred seventeen of the articles, therefore, had an average value of less than $5.00, whereas the missing carton was valued at almost $5,000.00, or one thousand times the average value of the other articles. The reasoning of the trial court that: "Whether all of the silver items were contained *928 in one carton or whether distributed among 218 cartons * * * doesn't affect the liability of the carrier * * *" overlooks the provision of the tariff to the effect that each shipping piece or package and the contents thereof shall constitute one article. The trial court's finding that "none of the items of silver had a value of more than $300.00" is not applicable here since all the items of silver were contained in one carton.
We, therefore, rule under the circumstances of this case that the carton of silverware shipped by the plaintiffs was an article of "peculiarly inherent or extraordinary value" within the meaning of the provisions contained within the bill of lading and Allied's tariff. Herring v. Alabama Great Southern Railroad Co., 236 Ala. 618, 184 So. 180 (1938), cert. denied, 306 U.S. 644, 59 S.Ct. 583, 83 L.Ed. 1044 (1939).

2. VALIDITY OF CARRIER'S LIMITATIONS
The parties at the time of trial and in submitting their initial briefs on appeal apparently assumed that if the carton of silverware was an item of extraordinary value and as such was not acceptable by Allied for shipment, it would necessarily follow that Allied would be relieved from any liability for the loss of the silverware by reason of the provisions contained in the bill of lading and in Allied's tariff. We do not feel that the issue is that confined, nor that we can limit our examination of the question by such presumption where an interstate common carrier is involved.
Since the enactment of the so-called "Carmack Amendment" to the Interstate Commerce Act (49 U.S.C.A. Sec. 20(11)) in 1906, an interstate carrier's liability has been governed exclusively by Federal law. Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913). We must, therefore, consider such law in this instance and examine the validity of the liability limitations asserted by Allied, even though such matter was not raised at trial or upon appeal. Rule 111(f), R.C.P. Colo., grants us the discretion to do so.
It is settled law that the Carmack Amendment codifies the Federal common law rules of carrier liability and declares void any provisions purporting to limit such rules of liability. Missouri P. R. Co. v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). The general proposition that a common carrier is not bound to accept and transport any and every article tendered regardless of value and consequent risk does not appear to have been modified by the Carmack Amendment, and it is our opinion that such statute does not impose carrier liability for an article which the carrier has no public duty to transport and which it did not knowingly accept for transportation. Herring v. Alabama Great Southern Railroad Co., supra; and Hecker Products Corporation v. Trans-American Freight Lines, Inc., 296 Mich. 381, 296 N.W. 297 (1941). In the instant situation Allied was not, in our opinion, required to accept the carton of extraordinary value for shipment and thereby become liable for its safe delivery. This would not be the situation, however, if Allied knew of the peculiar or extraordinary value of the carton and nonetheless undertook its shipment, nor would such result follow if Allied by its acts evidenced an intent to transport a class of article regardless of value, as was the situation in Thomas Electronics Incorporated v. H. W. Taynton Company, Inc., 277 F.Supp. 639 (M.D.Pa.1967).

3. KNOWLEDGE BY CARRIER
In view of the foregoing, the question next raised is whether Allied did undertake shipment of the carton of silverware with either actual or constructive knowledge of its peculiar and extraordinary value.
At trial Mrs. Smith testified that at the time the representative of Allied's affiliated packing and shipping company examined the contents of the Smiths' household prior to shipment he had no knowledge *929 of the particular silverware which was placed in the lost carton, nor of the fact that their family silver, by itself, had the value of approximately $5,000.00. The plaintiffs contend, however, that Allied did have constructive knowledge of the value of the silverware carton by reason of certain acts and statements on the part of the packers sent to the Smiths' home by Allied's affiliated company. However, Mrs. Smith's testimony was to the effect that she packed the silverware herself. There is nothing in Mrs. Smith's testimony to the effect that the packers knew or could have known of the value of the carton containing silverware, but the trial court found that such was the case.
Looking only to the plaintiffs' own versions of their contacts and conversations with the initial agent of Allied's affiliated company and with the packers sent to their Ogden home by such company, it is clear that there could not be any expectation on the part of the plaintiffs that any information as to the value of the silverware shipped nor as to the contents of the carton which was lost would be transmitted to the defendant company, as required by the law of agency. 3 Am.Jur.2d 644, Agency, Sec. 282. Coupled with this is the fact that the plaintiffs, by their own admission, had prior knowledge of the extraordinary value they placed on their silverware, and yet made no declaration on the bill of lading as to the extraordinary value of the carton containing the silverware, notwithstanding the fact that the bill of lading noticeably required such a declaration. In view of these facts, we conclude that the trial court erred in charging the defendant with knowledge of the value of and the contents of the lost carton.
The judgment of the trial court is hereby reversed insofar as it pertains to the value of the lost silverware. As to that portion of the judgment which is allocable to the other lost or damaged household goods, the judgment of the trial court is affirmed.
DWYER and ENOCH, JJ., concur.