SEMI METALS INC. AND GENERAL INSTRUMENT CORP.,
PLAINTIFFS, v. PINTER BROTHERS AND EASTERN
FREIGHTWAYS, INC., DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided November 29, 1973.

*Mr. Clifford J. Sheehan* for plaintiffs (*Messrs. Hueston & Hueston,* attorneys).

*Mr. Stanley P. Fishman* for defendant Pinter Brothers (*Messrs. Feuerstein, Sachs & Maitlin,* attorneys).

*Mr. Nathan L. Amdur* for defendant Eastern Freightways, Inc.

GASCOYNE, J. C. C. Temporarily Assigned. Since this is a matter of first impression in this State, a thorough review of the facts and law would be appropriate.

There seems to be no question that on August 17, 1970 Semi Metals, Inc. delivered a shipment of "2 ctns Electronic Material", with a weight of 225 lbs. to Pinter Brothers (Pinter) for consignment to Sylvania Electric Co., Chemical and Metallurgical Division (Sylvania), Towanda, Pa. The shipment was sent collect from plaintiff's place of business at 172 Spruce Street, Westbury, New York. The shipment was placed in a sealed trailer with other freight and was de-

livered to Eastern Freightways, Inc. (Eastern) at Carlstadt, New Jersey on August 18, 1970. Thereafter, when the trailer was unloaded and a count made, it was found that the two cartons were missing. They have never been recovered and plaintiff sues for full value. If plaintiff is entitled to full value, it is stipulated that this would be in the sum of $19,280. Defendants contend that plaintiff is limited by controlling tariffs to the description as set forth on the bill of lading upon which the carriers relied and based their charges.

The proofs before the court established that the shipment was germanium scrap, a semi-precious metal, used in the manufacture of certain solid state components for electronic equipment. The particular germanium in question had been purchased by plaintiff for delivery to Sylvania. At no time did Pinter inquire as to the value of the goods being shipped, nor was any value declared in writing by the shipper on the bill of lading, this being left blank. No value was agreed in writing as to the released value of the property prior to shipment. The court is satisfied that Pinter could have made itself aware of the extent of its liability merely by instructing its employees not to accept any shipment unless a value was declared on the bill of lading For reasons that will become apparent later, it should be noted that defendants' expert testified that the germanium shipment was of "high value" and not "extraordinary value."

The questions to be decided by this court are twofold: (1) Is plaintiff entitled to full value or a sum less than full value? (2) What is the liability *inter sese* of the carriers in answering to damages?

For the purpose of convenience the court elects to answer the second question first.

■■ Prior to the enactment of the Interstate Commerce Act with amendments culminating in 49 *U. S. C. A.* § 20 (11), a shipper had the obligation of proving which carrier was responsible for the damage or loss. Since the adoption of

the Act, the initial carrier is liable for any damage or loss caused by it or any connecting or succeeding carrier. The final or delivering carrier is responsible for any damage or loss by it or the preceding connecting carriers Thus, the shipper has option of proceeding against either the initial, delivering carrier, or both for any damage or loss of property, since both are jointly liable. *Atlantic Coast Line R. Co. v. Riverside Mills*, 219 *U. S.* 186, 31 *S. Ct.* 164, 55 *L. Ed.* 167 (1910) ; *New York, Philadelphia & Norfolk R. R. Co. v. Peninsula Produce Exchange*, 240 *U. S.* 34, 36 *S. Ct.* 230, 60 *L. Ed.* 511 (1915) ; *Whitlock Truck Service, Inc. v. Regal Drilling Co.*, 333 *F.* 2d 488 (10 Cir. 1964). As between the carriers, the initial carrier is responsible unless it proves that a subsequent carrier was guilty of negligence which proximately caused the damage to or loss of the property. *Southern Express, Inc. v. Motor Freight Lines, Inc.*, 200 *F.* 2d 797 (5 Cir. 1952). There being no proofs that the loss of the goods was due to the negligence of the terminal carrier, Eastern, the liability rests solely with the initial carrier, Pinter.

The question of damages presents a far more difficult problem. This court is convinced that plaintiff intentionally misdescribed the shipment solely for the purpose of obtaining the lowest rate possible at no risk to it, since plaintiff was insured. The description of the shipment as "electronic equipment" bears as much relationship to the nature of the cargo as describing a shipment of diamonds as watches simply because diamonds are used in the manufacture of watches.

Prior to the enactment of the Interstate Commerce Act by Congress the subject of liability of carriers for loss or damages to goods was left to the states to establish, leaving the states free to permit the carrier to limit its liability by contract. However, Congress, exercising its power to regulate interstate commerce, having spoken, the states are bound to follow the dictates of the legislation. *New York, New*

*Haven & Hudson R. R. Co. v. Nothnagle*, 346 *U. S.* 128, 73 *S. Ct.* 986, 97 *L. Ed.* 1500 (1952).

The purpose of Congress in enacting the Interstate Commerce Act was for the prevention of fraud, collusion and discrimination by carriers and favored shippers, to the injury and prejudice of the public. *Interstate Commerce Commission v. Baltimore R. R. Co.*, 145 *U. S.* 263, 12 *S. Ct.* 844, 36 *L. Ed.* 699 (1892). A further purpose was to insure uniformity of application by the courts of this nation.

The parties are agreed that the provisions of 49 *U. S. C. A.* § 20, par. 11 is applicable to the instant case. It provides as follows:

Any common carrier, * * * receiving property for transportation from a point in one State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, * * * to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, * * * from the liability imposed; and any such common carrier * * * so receiving property for transportation from a point in one State * * * to a point in another State * * * or any common carrier * * * delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, * * * to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States * * * when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void * * * *Provided, however*, That the provisions hereof respecting liability for full actual loss * * * shall not apply * * * to property, except ordinary livestock, received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper

or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to be a violation of section 10 of this title; and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agreed upon; and the commission is empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would, in its opinion, be just and reasonable under the· circumstances and conditions surrounding the transportation. * * *

As has been noted heretofore, the adoption of the Interstate Commerce Act was intended to correct certain evils in the industry. After the passage of the Carmack Amendment in 1906, both interstate carriers and shippers were chargeable with knowledge of the schedules filed with·the Interstate Commerce Commission and were presumed to have contracted according to them in respect to rates and liability unless there was evidence of rebating or false billing. *Atchison, Topeka & Santa Fe v. Robinson*, 233 *U. S.* 173, 34 *S. Ct.* 556, 58 *L. Ed.* 901 (1913) ; *Louisville & Nashville R. Co. v. Maxwell*, 237 *U. S.* 94, 35 *S. Ct.* 494, 59 *L. Ed.* 853 (1915). However, after the adoption of first Cummins Amendment in 1915, no interstate common carrier could lawfully limit its liability by contract unless the goods were hidden from view by some means and the carrier was not notified of the nature of the goods. If the carrier was so advised, it could then require the shipper to declare the value of such goods in writing and its liability would be thus limited. Otherwise, the common carrier's liability was for the full value of the goods, whether or not it issued a bill of lading or receipt.

▐▐ The second Cummins Amendment was adopted in 1916 and the changes are reflected in the above quotation of § 20(11) of the Act. Pursuant to § 20(11) every initial carrier must issue a bill of lading or receipt, and such carrier is liable for the full actual loss or damage sustained during carriage on a through bill of lading. Any attempt

to limit liability is prohibited except on declaration of value by the shipper or a released value agreed to by the parties. Both must be in writing. Thus, as the law stands today, the bill of lading is a contract and is binding upon the parties as any other contract. *Pennsylvania R. R. Co. v. Greene,* 173 *F. Supp.* 657 (S. D. Ala. 1959). The rights and liabilities of the parties are governed by the acts of Congress, the bill of lading and the tariffs duly filed with the Interstate Commerce Commission. The bill of lading and tariff have the force of statute and they cannot be varied under any pretext. The carrier cannot lawfully depart from them. *New York Central & Hudson R. R. Co. v. York & Whitney Co.,* 256 *U. S.* 406, 41 *S. Ct.* 509, 65 *L. Ed.* 1016 (1921).

█ The language of *Caten v. Salt City Movers & Storage Co., Inc.,* 149 *F.* 2d 428 (2 Cir. 1945), seems to be particularly applicable to the case *sub judice.*

* * * Unless the carrier can comply with the requirements of the statute merely by putting into writing what the shipper has told it orally and then keeping that writing without giving the shipper a chance to verify it and acquiesce in it if found correct or to repudiate it if found incorrect, there was no compliance shown here. Obviously no such loose interpretation of the statute is permissible. It seems plain that nothing was done by these shippers in writing, or in respect to any writing, which had anything whatever to do with a valuation of their property for shipment under one rate or any other. * * * To permit a carrier, without any action whatever by the shipper in respect to valuation in writing, to limit its liability on the basis of declared or released value on which the rate was charged would be to ignore entirely the statutory requirements that the shipper must make the declaration or agreement in writing, and nullify that part of the proviso.

The statute makes it abundantly clear that the carrier's common law liability for full actual damages, whether or not caused by its negligence, is imposed when it accepts goods for carriage, unless a certain specified agreement limiting that liability has been made as the result of an equally certain specified action by the shipper in respect to a voluntary valuation of his goods. Even then the carrier is not permitted to contract against liability for its own negligence. Only by giving the shipper an opportunity to choose between higher and lower rates based upon valuation can the carrier place the shipper who has selected a lower rate in the prescribed manner in the position where he is estopped to assert loss or damage to an amount

in excess of the declared valuation upon which the rate was fixed. *Boston & Maine R. Co. v. Piper*, 246 U. S. 439, 38 S. Ct. 354, 62 L. Ed. 802, Ann. Cas. 1918E, 469; *Hart v. Pennsylvania R. Co.*, 112 U. S. 331, 5 S. Ct. 151, 28 L. Ed. 717; *Union Pacific R. Co. v. Burke*, 255 U. S. 317, 41 S. Ct. 283, 65 L. Ed. 656. Here nothing was done by the shippers which amounted to written action by them as to valuation, and any agreement limiting the defendant's liability to less than the actual value was void. * * *

See also, *Thomas Electronic, Inc. v. H. W. Taynton Co.*, 277 F. Supp. 639 (M. D. Pa. 1967); *Paramount Dress Co. v. Kirby & Kirby*, 167 Pa. Super. 524, 76 A. 2d 432 (1950), and *Loeb v. Friedman Express, Inc.*, 187 Misc. 89, 65 N. Y. S. 2d 450 (Sup. Ct. 1946), where the court said:

* * * Here the charges constituting the freight rate were not entered in writing on the bill of lading, nor were those charges prepaid by the shipper. It could not be said, therefore, that having accepted the benefit of the lower rate dependent upon a specified valuation, the shipper is estopped from asserting a higher value; nor could it be said in this case, even on the basis of presumption of knowledge on the part of the shipper of the rate-valuation relationship, that there was anything in writing on the bill of lading to constitute an agreement as to valuation.

In order to sustain a limitation of liability in this case we should be obliged to go beyond the earlier cases and to hold that where a bill of lading in the form here used, received by the shipper and signed by him, contains a legend calling for the declared value to be stated by the shipper, which value is not inserted, that in itself is tantamount to a declaration in writing of the value of the shipment on the basis of the minimum tariff. The statutory language has no such meaning.

Liberality in the construction of a statute such as is here involved may be desirable, but that process may not be stretched to the point of disregarding its plain provisions. In the guise of judicial construction a court should not rewrite a statute. * * * [at 454]

■ Thus, even though the court feels that there was an intentional misdescription on the part of plaintiff, there are insufficient facts under the existing law to declare an estoppel.

There is another exception to the rule that permits the carrier to limit its liability. This was enunciated in *Allied Van Lines, Inc. v. Smith*, 28 Colo. App. 85, 470 P. 2d 926 (1970),

as the "extraordinary value" exception. In light of the experts' testimony, defendants do not fall within the corners of this exception.

Judgment will be entered in the sum of $19,280 without interest against defendant Pinter Brothers.