135 N.J. Super. 464 (1975)
343 A.2d 757
SEMI METALS, INC. AND GENERAL INSTRUMENT CORP., PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
PINTER BROTHERS, DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND EASTERN FREIGHT WAYS, INC., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued May 13, 1975.
Decided July 10, 1975.
*465 Before Judges HALPERN, CRAHAY and WOOD.
Mr. Stanley P. Fishman argued the cause for appellant, Pinter Brothers (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
Mr. Clifford J. Sheehan argued the cause for respondent, Semi Metals, Inc. and General Instrument Corp. (Messrs. Hueston, Hueston & Sheehan, attorneys).
Mr. Herbert M. Guston argued the cause for defendant, Eastern Freight Ways, Inc. (Messrs. Guston & Reiss, attorneys).
*466 PER CURIAM.
In its complaint seeking money damages plaintiff Semi Metals, Inc. (Semi Metals), a subsidiary of General Instrument Corp. (General), alleged delivery of two cartons of germanium metal to defendant Pinter Brothers (Pinter) for shipment, under a uniform straight bill of lading, to the Sylvania Electric Company in Pennsylvania. Defendant Eastern Freight Ways, Inc. (Eastern) was to be the connecting carrier in the transmittal. Plaintiff contended that the metal was thereafter "lost, stolen or converted." (A second count in the complaint, grounded in the same factual allegations, asserted a bailment of the metal and loss through negligence.)
It was stipulated that the full value of the goods was $19,280. Defendants included in their answers as a separate defense that plaintiff's damages, if any, were limited by the terms of the bill of lading under which the germanium was shipped.
Following a trial without a jury the trial judge entered judgment in favor of plaintiff in the sum of $19,280 without interest against Pinter. Eastern had a judgment of dismissal. The trial judge's reasons were reported. Semi Metals, Inc. v. Pinter Bros., 126 N.J. Super. 124 (Law Div. 1973). Pinter appeals, asserting essentially that
I. Since the trial court found as a fact that plaintiff had committed an "intentional misdescription" of the contents of the shipment, recovery was barred.
II. Even if plaintiff is entitled to recover, appellants' liability is limited by tariffs filed with the Interstate Commerce Commission.
III. If there is any liability owing to plaintiff, responsibility therefor should be borne by co-defendant Eastern.
Semi Metals cross-appeals, asking that the judgment be modified to include interest.
We are satisfied that, as between defendants Pinter and Eastern, the trial judge on this record correctly held that Pinter was the liable carrier, and we affirm that holding *467 essentially for the reasons given by the trial court, 126 N.J. Super. at 128. However, we perceive that the trial judge erred in the quantum of damages assessed and reverse on that score. It may be illuminative to enlarge on the factual recitation set out below.
Two cartons of germanium scrap weighing 225 pounds were received by Pinter from Semi Metals on August 17, 1970. Germanium is a semi-precious metal used in the manufacture of electronic equipment. In August 1970 it had a value of between $220 and $260 a kilogram. (In view of the stipulation we calculate the value to be slightly in excess of $85 a pound.)
The two cartons were picked up by a truck driver employed by Pinter at Semi Metals' plant and placed on one of its trucks, and thereafter have not been accounted for.
Semi Metals prepared the bill of lading for the transmittal of the germanium and it chose to describe the shipment as "2 ctns. Electronic Material". That labeling was twice referred to by the trial court as an intentional misdescription.[1] The propriety of that finding is patent in light of the record.
Semi Metals' purchasing agent, David Shapiro, testified that he purchased the involved germanium in August 1970 from a company in Denmark at a favorable price and shortly thereafter sold and shipped it collect to Sylvania in Pennsylvania without realizing a profit, expecting to buy it back within 30-60 days at a higher price. The record is not entirely clear as to the nature of this transaction, the stated reason ultimately being, "To reduce any inventory."
On direct examination Shapiro testified that the materials were shipped "collect" pursuant to instructions from Sylvania, *468 and for this reason no value of the goods was stated in the bill of lading. Shapiro, who was in charge of plaintiff's shipping operations, prepared the bill of lading. He testified that Semi Metals had insurance covering the full value of the shipment against any loss.[2]
Shapiro did not tell Pinter's truck driver what the two cartons contained or that the shipment "was worth a lot of money." On direct examination Shapiro first stated that there was no reason why he didn't employ the word "germanium" rather than "electronic equipment," asserting that "I always put down `electronic equipment.'" When asked if there was a value on shipped goods based upon tariffs, Shapiro claimed not to know.
Significantly, however, Shapiro stated that it was plaintiff's company policy not to put values on shipments of materials and that one of the reasons therefor was the avoidance of higher freight charges. The record makes clear that value was of little moment to plaintiff since it had purchased insurance against loss. The record reflects this during Shapiro's examination:
Q. Isn't one of the reasons why [no value is put on shipment] because there would be a higher freight charge?
A. I would say yes to that.
Q. Isn't it a fact the reason you don't put it on there is to keep your freight charges low?
* * * * * * * *
A. Is the question to keep the rate low?
Q. Right.
A. Yes.
Q. Isn't that the reason you purchased insurance, to protect yourself in that manner?
A. Yes.
Indeed, scrap gold, said Shapiro, would have been shipped in like manner and we presume for the same reasons.
*469 As the trial judge noted, the liability of common carriers for the loss of shipped goods and limitations on that liability are found in 49 U.S.C.A. § 20(11). That legislation makes common carriers generally liable for the full actual loss to goods in transit on a through bill of lading notwithstanding attempted limitations on liability for full actual loss to the property. However 
* * * That the provisions hereof respecting liability for full actual loss * * * shall not apply * * * to property, except ordinary livestock, received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, * * * and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agreed upon; and the commission is empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would, in its opinion, be just and reasonable under the circumstances and conditions surrounding the transportation. * * * [49 U.S.C.A. § 20(11)]
Ordinarily the metal involved in this case would be clearly within the cited exception, there being at the time of loss a filed tariff governing them. However, as noted, there was no declared value on the bill of lading. The trial judge observed that
The rights and liabilities of the parties are governed by the acts of Congress, the bill of lading and the tariffs duly filed with the Interstate Commerce Commission. The bill of lading and tariff have the force of statute and they cannot be varied under any pretext. The carrier cannot lawfully depart from them. [126 N.J. Super. at 131]
We add only that neither may a shipper. Time-D.C., Inc. v. Tappins, Inc., 126 N.J. Super. 179 (Cty. Ct. 1973), aff'd 132 N.J. Super. 5 (App. Div. 1975).
*470 The record supports a finding that at the time of this transaction there was duly filed with the Interstate Commerce Commission, pursuant to 49 U.S.C.A. 317(a), tariffs governing freight traffic  National Freight Classification A-11 (effective June 11, 1970). Among its many provisions it includes an item for scrap metals N.O.I. (Not Otherwise Indicated). Different rates are authorized for released value of (1) up to 40 cents a pound, (2) between 40 cents and $1 a pound and (3) between $1 and $5 a pound. The tariff further prescribed:
Note  The released value must be entered on shipping order and bill of lading in the following form:
`The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding ____ per pound.'
 __________________________
 (Shipper's Signature)
and
If the shipper declines or fails to declare the value or agree to a released value in writing the shipment will not be accepted, charges will initially be assessed on basis of the class for the highest valuation provided. Upon proof of the lower actual value, freight charges will be adjusted to the basis of the class or rate applicable in connection with such actual value. In no instance will carriers' liability exceed the highest value for which classes are provided.
The tariff contemplated for scrap metals a maximum released value of not more than $5 a pound unless otherwise declared. We cannot conceive that the carrier here would have accepted the germanium and transported it if alerted by the shipper to a value greatly in excess of $5 a pound. (Interestingly, in view of Shapiro's testimony, we note that another item in the tariff provides that gold articles are "not taken" under the Motor Freight Classification Tariff.)
Thus, in light of plaintiff shipper's position that it deliberately labeled the metals "electronic materials" (the *471 tariff has no such classification) to enjoy reduced freight charges (at no risk to it in view of its insurance coverage), we do not perceive that the exceptional loss should be borne by the carrier. The misdescription was intentional and had the clear capacity to mislead. Herring v. Alabama Great Southern Railroad Co., 236 Ala. 618, 184 So. 180 (Sup. Ct. 1938), cert. den. 306 U.S. 644, 59 S.Ct. 583, 83 L.Ed. 1044 (1939); cf., Allied Van Lines, Inc. v. Smith, 28 Colo. App. 85, 470 P.2d 926 (App. Ct. 1970). Compare New York City R. Co. v. Goldberg, 250 U.S. 85, 39 S.Ct. 402, 63 L.Ed. 857 (1919). See also, Annotation, "Shipper's misdescription of goods as affecting carrier's liability for loss or damage", 1 A.L.R.3d 736 (1965). We need not and do not pass upon  as Pinter asks us to  whether plaintiff's conduct constituted a breach of the penal provisions of 49 U.S.C.A. § 10(3).
It appears that the trial court placed reliance for its holding on Caten v. Salt City Movers & Storage Co., Inc., 149 F.2d 428, 432 (2 Cir.1945); Thomas Electronic, Inc. v. H.W. Taynton, Inc., 277 F. Supp. 639 (M.D. Pa. 1967); Loeb v. Friedman's Express, Inc., 187 Misc. 89, 65 N.Y.S.2d 450 (Sup. Ct. 1946), aff'd 271 App. Div. 973, 66 N.Y.S.2d 634 (App. Div. 1946), aff'd 296 N.Y. 1029, 73 N.E.2d 906 (Ct. App. 1947), cert. den. 331 U.S. 851, 67 S.Ct. 1743, 91 L.Ed. 1859 (1947) and Paramount Dress Co. v. Kirby & Kirby, 167 Pa. Super. 524, 76 A.2d 432 (Super. Ct. 1950). We do not view those authorities as operative on this record. In none of them do we see a finding of intentional misdescription of the goods involved, with an eye by the shipper to thereby pay reduced freight charges. It simply does not conform with plain principles of justice to permit a shipper to enjoy reduced freight rates by an intentional act and reap the benefits of that contract when there is no loss but disclaim the shipping agreement where there is one. Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 *472 (1912). In a word, on this record plaintiff was estopped from invoking the holding of Caten and its progeny.
Lastly, we see no warrant in this record for disturbing the trial court's denial of interest.
Accordingly, the judgment under review is modified granting judgment to plaintiff against defendant Pinter in the sum of $1,125 ($5 a pound as limited by the tariff), without interest.
NOTES
[1] Included on the uniform straight bill of lading was: "NOTE  where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property." Semi Metals here gave no value.
[2] While ordinarily not relevant, we note here that plaintiff was fully reimbursed for the loss sustained, and the action below was brought by General's insurance carrier (in Semi Metals' name) under subrogation rights.