577 F.2d 665
 Jose R. MASS, Plaintiff-Appellee,
v.
BRASWELL MOTOR FREIGHT LINES, INC., Defendant-Appellant.
 No. 77-1162.
 United States Court of Appeals,
Ninth Circuit.
 July 5, 1978.
 
 Robert Nash, Los Angeles, Cal. (appeared), of Spray, Gould & Bowers, Orange, Cal., for defendant-appellant.
 Newton Kalman (appeared), of Caidin, Kalman & Sampsen, Beverly Hills, Cal., for plaintiff-appellee.
 On Appeal from the United States District Court for the Central District of California.
 Before TRASK and GOODWIN, Circuit Judges, and SOLOMON,* District Judge.
 PER CURIAM:
 
 
 1
 Braswell Motor Freight Lines, Inc. (Braswell) appeals from an adverse judgment based on a jury verdict which granted appellee Jose Mass $18,229.87 under the Motor Carrier Act, 49 U.S.C. § 301 et seq., for the loss of a carton of valuable movie posters.
 
 
 2
 Braswell contends that the district court erred when it ruled as a matter of law that:
 
 
 3
 (1) Mass did not mislead Braswell about the contents of the carton in order to obtain a low freight rate;(2) Mass was not bound by the exclusion from liability provision in Braswell's bill of lading; and
 
 
 4
 (3) Braswell was a common carrier.
 
 
 5
 Mass was a designer of movie posters and a collector of valuable old movie posters and display stills.
 
 
 6
 In 1974, Mass took his collection to New Orleans. When he decided to return to Los Angeles, Mass packed the collection in 48 cartons with the help of Caesar Lopez. Together they inventoried the contents of 12 of the 48 cartons. These 12 cartons were each about 30" X 19" X 12". According to Mass, they contained the exceptionally rare and valuable part of his collection. One of these 12 cartons was lost in the shipment.
 
 
 7
 Shortly before he left for Los Angeles, Mass called Braswell's office in New Orleans. Mass testified that he spoke with an unidentified Braswell rate-clerk and told the rate-clerk that the 48 cartons contained valuable movie advertising materials; the rate-clerk quoted him a freight rate and told him not to insure the shipment because Braswell was careful and had coverage. Mass admitted that he had shipped his materials on another occasion, and they had been damaged by mishandling. He also admitted that he knew that a shipper must request and pay a premium for insurance on mailed shipments.
 
 
 8
 Braswell contends that Mass deliberately failed to state the value of the shipment to the rate-clerk in order to obtain a lower freight rate. Braswell points to the freight bill issued to Mass for $102.66 for 48 cartons of "printed material" weighing 1342 pounds shipped from New Orleans to Los Angeles. This bill was based on the freight rate for shipping printed material of "no specific exchange value, premium value or redeemable value." All of the other evidence was undisputed.
 
 
 9
 On September 11, 1974, a Braswell driver picked up the 48 sealed cartons at Mass's apartment. Mass was not there. Mass's friend and agent, Caesar Lopez, signed a bill of lading presented by the Braswell driver. On the bill of lading, either Braswell or Lopez entered the words "advertising materials."
 
 
 10
 On the back of the bill of lading, section 5 of the "Contract Terms and Conditions" provided, in fine print:
 
 
 11
 "No carrier hereunder will carry or be liable in any way for any documents, specie, or any articles of extraordinary value not specifically rated in the published Classification of Tariffs unless a special agreement to do so and a stipulated value of the articles are hereon enclosed."
 
 
 12
 At the trial, Mass did not contend that the published Classification of Tariffs rated valuable old movie advertising materials.
 
 
 13
 The bill of lading, on its face, contained this paragraph:
 
 
 14
 "NOTE Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding ______ per ______."
 
 
 15
 The blanks were not filled in.
 
 
 16
 Two experts on movie memorabilia testified for Mass. They estimated the value of the lost carton at between $13,000.00 and $30,000.00. Their opinions were based on the inventory prepared by Mass and Lopez.
 
 
 17
 The district court rejected Braswell's requested jury instructions on its defenses that:
 
 
 18
 (1) Mass fraudulently failed to disclose the value of the contents of the carton;
 
 
 19
 (2) Mass was bound by the exclusion of liability provision in section 5 of the bill of lading;
 
 
 20
 (3) Braswell was not a common carrier of goods which have extraordinary value.
 
 
 21
 Instead, the court ruled that Braswell as a matter of law was liable for the loss of the carton and asked the jury to fix Mass's damages for the "advertising materials" in the lost carton.
 
 
 22
 On Braswell's defense of misdescription, the court ruled that there was no evidence on which the jury could reasonably conclude that Mass misdescribed the contents of the carton to get a lower freight rate.
 
 
 23
 Under the Carmack Amendment as incorporated in the Motor Carrier Act, a common carrier "shall be liable . . . for any loss, damage or injury" to an interstate shipment. 49 U.S.C. §§ 20(11), 319. But this insurer's liability is subject to the common law rule that a shipper who intentionally fails to disclose the high value of his shipment in order to get a lower freight rate is barred by his misconduct from recovery for a loss the carrier did not anticipate. Semi Metals, Inc. v. Pinter Bros., 135 N.J.Super. 464, 343 A.2d 757 (App.Div.1975); Allied Vans, Inc. v. Smith, 28 Colo.App. 85, 470 P.2d 926 (1970) (both construing the Carmack Amendment); see II Kent's Commentaries * 603-604 (990-991) (14th ed. 1896).
 
 
 24
 Mass had shipped these materials before and some of them had been damaged. Now, before the materials were delivered to Braswell for shipment, Mass was told the freight rate. Lopez inventoried the contents of the 12 cartons, and he as well as Mass knew the valuable character of the material in those cartons. The freight bill for only $102.66 was for the shipment from New Orleans to Los Angeles of 48 cartons weighing 1342 pounds and containing " printed materials" of "no specific exchange value, premium value, or redeemable value." This evidence, together with the limitation provisions in the bill of lading, which Lopez signed, created a jury issue on whether Mass intentionally misdescribed the shipment as movie posters or advertising materials.
 
 
 25
 In our view, the district court should have submitted Braswell's defense of fraudulent misdescription to the jury.
 
 
 26
 The Carmack Amendment provides that a common carrier cannot limit its liability to a shipper without a value "declared in writing by the shipper or agreed upon in writing as the released value of the property."
 
 
 27
 Mass did not declare a value or agree to one in writing. The bill of lading did not contain a value or freight rate. Loeb v. Friedman's Express, Inc., 187 Misc. 89, 65 N.Y.S.2d 450 (App.Term 1946), affirmed, 271 App.Div. 873, 66 N.Y.S.2d 634, affirmed, 296 N.Y. 1029, 73 N.E.2d 906, cert. denied, 331 U.S. 851, 67 S.Ct. 1743, 91 L.Ed. 1859 (1947); Thomas Electronics, Inc. v. H. W. Taynton Co., 277 F.Supp. 639 (M.D.Pa.1967).
 
 
 28
 The court correctly ruled that Braswell could not enforce the limitation on liability provision in section 5 of the bill of lading.
 
 
 29
 Braswell offered in evidence its Certificate of Convenience from the ICC. The Certificate prohibited Braswell from acting as a common carrier of articles which had "unusual value". The offer was rejected.
 
 
 30
 Professor Williston in his treatise on contracts sets forth the applicable law: "The law determines common carrier status by what is done rather than by corporate character or declared purposes, and so long as the service is actually rendered on a public basis, lack of authority so to operate, disclaimer or subterfuges designed to simulate private carriage will not absolve the proprietor from the duties of a common carrier." 10 Williston, Contracts § 1071B, at 12 (3rd ed. 1967) (citations omitted); Thomas v. National Delivery Association, 24 F.Supp. 171 (W.D.Pa.1937).
 
 
 31
 The district court properly ruled that Braswell, as a matter of law, was a common carrier of Mass's shipment.
 
 
 32
 The judgment of the district court is reversed and the case is remanded for a trial on the issue of fraudulent misdescription.
 
 
 33
 REVERSED.
 
 
 
 *
 Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation